177
d206

473
497

J. Z. Long and N. G. Pletcher, Trustees; A. M. De Haas, S. K. Spangler, Jos. C. Swartz and V. B. Smith, Elders of Disciple Church at Eagleville; Farley Stout and Orin T. Noble, Elders of Disciple Church at Lock Haven, *v.* H. L. Harvey, A. W. Gardner, A. J. Gardner and R. C. Leathers, Appellants.

*Church law—Power of the courts.*

The power of the courts to adjudicate disputes between warring church parties is limited to an examination of the rules of the church organization only for the purpose of ascertaining the church law, and if that be not in conflict with the law of the land, all they can do is to protect the rights of parties under the law which they have made for themselves.

*Church law—Majorities.*

A majority of a church organization may direct and control church matters consistently with the particular and general laws of the organization or denomination to which it belongs, but not in violation of them.

*Church law—Equity—Congregational government.*

Plaintiffs and defendants in a bill in equity were members of a congregation of a religious denomination known as " Disciples of Christ," in

which denomination every congregation is practically independent.    The defendants were officers of the church, and their term of office was indefinite.    Against the protest of the defendants, delegates and ministers from other congregations met with members of the congregation outside the church, and by a vote deposed the defendants, and elected in their places the plaintiffs.    *Held*, (1) that the plaintiffs were wrongly elected officers, and that they had no right to the control or possession of the church property ; (2) other congregations of the denomination may advise, but there is no superior tribunal of appeal.

Argued April 22, 1896.    Appeal, No. 85, Jan. T., 1896, by defendants, from decree of C. P. Centre Co., Nov. T., 1890, No. 77, on bill in equity.    Before Sterrett, C. J., McCollum, Mitchell, Dean and Fell, JJ.    Reversed.

Bill in equity to secure reinstatement in the offices of a church.

The facts appear by the opinion of the Supreme Court.

The master, Clement Dale, Esq., reported a decree in favor of the plaintiffs.

Exceptions to the master's report were overruled by Furst, P. J., who entered a decree in accordance with the recommendation of the master.

The associate judges unlearned in the law entered a decree dismissing the bill.

*Error assigned* was decree of the president judge in favor of plaintiffs.

*Ira C. Mitchell* and *C. P. Hewes*, for appellants.—The decree appealed from is not the decree of the court, but the individual judgment of one member of the court.    Equity jurisdiction is vested in the court of common pleas ; not in a single judge thereof : Constitution of 1790, art. 5, secs. 4, 7, Act of April 14, 1834, sec. 20, P. L. 344 ; Constitution of 1838, art. 5, sec. 3 ; Constitution of 1874, art. 5, sec. 4 ; Leib v. Com., 9 Watts, 218 ; Com. v. Addison, 4 Dallas, 224 ; Reiber v. Boos, 110 Pa. 594.

In adjudicating concerning ecclesiastical affairs the secular courts have regard for the peculiarities of the ecclesiasticism involved.    The laws of the ecclesiastical body will be recognized and enforced by the civil courts when not in conflict with the

constitution and laws of the state: Tuigg v. Treacy, 104 Pa. 493 : Krecker v. Shirey, 163 Pa. 551.

In church organization those who adhere and submit to the regular order of the church are the true congregation: Winebrenner v. Colder, 43 Pa. 244; Schnorr's App., 67 Pa. 138; Kerr v. Trego, 47 Pa. 292; Roshi's App., 69 Pa. 462. It does not matter that a majority of any given congregation or annual conference is with those that dissent. The power of the majority, as well as that of the minority, is bound by the discipline: Krecker v. Shirey, 163 Pa. 547; McAuley's App., 77 Pa. 397; Landis's App., 102 Pa. 467; Stack v. O'Hara, 90 Pa. 477; Schlichter v. Keiter, 156 Pa. 119.

Where the question of the right of possession of the property of an incorporated association arises between its members, it must be decided by the constitution and by-laws of the association, or, in the absence of any sufficient provision therein for such a case, by the majority of the members. The general rule is that title is joint and several but the right of possession joint only: Liederkranz Society v. Germania Turn-Verein, 163 Pa. 265.

*Wilbur F. Reeder*, for appellees.—Relief could be afforded only by equity, and the malcontents could be restrained and held to their duties only by the powers of a chancellor: Kisor's App., 62 Pa. 423; Kerr v. Trego, 47 Pa. 292.

In a church or other unincorporated association, where a meeting is duly announced for a certain purpose and the congregation assemble in their associate capacity, a majority of those present may act and the action or decision of said meeting shall be binding: Shortz v. Unangst, 3 W. & S. 45; Unangst v. Shortz, 5 Wharton, 506 ; Henry v. Deitrich, 84 Pa. 286 ; Craig v. First Presbyterian Church, 88 Pa. 42. A majority may direct and control any other matters consistently with the particular and general laws of the organism or denomination to which they belong: McGinnis v. Watson, 41 Pa. 9; Sutter v. Trustees of the First Reformed Dutch Church, 42 Pa. 503. The members in good standing before the difficulty arose, who are desirous of adhering to the congregation and order, are entitled to vote: Winebrenner v. Colder, 43 Pa. 244. The only constitutional method by which a congregation can express itself is by congre-

gational meetings regularly held: McAuley's App., 77 Pa. 396. There is a distinction between a corporate act to be done by a definite or indefinite number of persons. In the former a majority of the whole body must be present to act; in the second a majority of those who appear may act: Craig v. First Presbyterian Church, 88 Pa. 47.

The decision of ecclesiastical tribunals in all cases on doctrine, order and discipline are conclusive on the common law courts: Skilton v. Webster, Brightley's Rep. 203; Henderson v. Hunter, 59 Pa. 335; Watson v. Jones, Book 20 U. S. C. R. 679; McGinnis v. Watson, 41 Pa. 9; Bouldin v. Alexander, Book 21 U. S. C. C. R. 69; Com. v. Beneficial Society, 8 W. & S. 247.

The purely legal business of a court of original jurisdiction must be subject to the control of a single judge, if efficiency, promptitude and official responsibility are worth maintaining : Kolb's Case, 4 Watts, 154; Glamorgan Iron Co. v. Snyder, 84 Pa. 399.

OPINION BY MR. JUSTICE DEAN, October 5, 1896 :

The plaintiffs' bill in this case avers, as follows: In 1832 a religious congregation was organized at Howard, Centre county, Pennsylvania, denominated "Disciples of Christ;" at the commencement of these proceedings, it numbered sixty persons, and was not incorporated; one R. C. Leathers made a report to the Pennsylvania conference for the year 1889, that there were but fifteen members in good standing composing the congregation; that this report dropped from the rolls of the congregation a majority of its members without notice or hearing, and without warrant. On February 7, 1890, the majority appealed to an impartial tribunal (not named), and asked the elders to join in choosing said tribunal, which they, the elders, refused to do; then, a majority of the congregation, acting through a committee, appealed to the elders of a sister church at Eagleville to hear and determine the complaint which had created schism; the elders of the Eagleville church entertained the appeal, and called in elders of the sister congregations of Lock Haven and Williamsport, and together they heard the complaint on June 13, 1890, and rendered a decision, recommending the calling of a meeting of the

congregation at Howard on June 25, 1890, following; due notice of the meeting was given; on the day named defendants closed and locked the doors of the church and prevented the meeting in the church; those members who had complained and appealed, then organized a meeting outside and in front of the church, presided over by Rev. Ryan of Williamsport; at this meeting, J. Z. Long, one of plaintiffs, was elected a trustee in place of H. L. Harvey, then a trustee, and one of these defendants, N. G. Pletcher, theretofore and then a trustee, and one of plaintiffs, was approved, as was also A. J. Gardner, one of defendants; A. J. Gardner and R. C. Leathers were deposed as elders, and the congregation, for the time being, was placed under the supervision and jurisdiction of the elders of Eagleville and Lock Haven; notwithstanding their deposition, the old board of trustees continued to act, and the old board of elders persisted in holding on to their offices, and by force and violent demeanor prevented the elders of Eagleville and Lock Haven churches from assuming and exercising the jurisdiction and supervision conferred upon them by the 25th of June meeting, and persisted by force and threats to debar a majority of the congregation from engaging in worship in the church; that the 25th of June meeting was constituted and held by competent authority of the denomination, and all its proceedings were regular under the usages of the church, and that the exercise of authority by defendants was wrongful. The prayers for relief were: that Harvey, the two Gardners and Leathers be enjoined from acting as trustees or elders, and from preventing Long and Pletcher from assuming the offices to which they had been elected, and that they be further enjoined from preventing the elders of Eagleville and Lock Haven from assuming supervision of the congregation: and further, that they and each of them be enjoined from excluding a majority of the congregation from worshiping in the church.

The answer of defendants denies that those who appealed, called on the elders of Eagleville and Lock Haven churches and held the meeting of 25th of June are a majority of the congregation; on the contrary they aver that they compose but a small minority; that O. T. Noble and A. M. De Haas, neither of them members of the congregation, but acting as a committee for the meeting, attempted to take possession of the church

property and turn it over to the minority composing the meeting, thus ousting the regular organization and putting a wholly irregular one in control; they admit they resisted this unauthorized interference; they further aver that one Rev. W. L. Hayden, of Bellefonte, came with the sheriff at the hour of public worship, on the 10th of August following the meeting, and read a lecture or proclamation to them, commanding them to surrender possession of the church to the minority, which they refused to do.   They further aver that the action of the 25th of June meeting with the elders of the churches of Eagleville and Lock Haven and clergymen from other congregations was wholly unauthorized and unknown to the rules and discipline of the church; that there exists no other power to adjust differences in a Disciple congregation but the elders and the congregation, and the congregation alone can depose officers duly elected. That this was a regular and fully organized congregation, with a duly elected pastor, Rev. G. W. Headley; that the defendants, the duly elected officers representing a majority of the congregation, do not exclude any, but invite all the members to worship in said church.   They therefore pray that the bill be dismissed at plaintiffs' costs.

The court appointed the late D. S. Keller, Esq., master to report facts and suggest a decree; he took much testimony, and heard full argument by counsel, but died before reporting to the court.   Clement Dale, Esq., was appointed in his stead, who without hearing the argument made report; he suggested for decree that defendants be enjoined from acting as officers, or otherwise interfering with the occupation of the church, and that some person be appointed to give two weeks' notice of a congregational meeting of the members now in good standing, for the purpose of electing two elders, three deacons and three trustees to serve for two years, and thereafter the elections to be conducted according to the usages of the church; the same person appointed to give notice, to preside at the election; after the election, the terms of present incumbents' office to end. The president judge approved the report of the master, made in substance the decree suggested by him, and appointed A. M. De Haas, one who sided with plaintiffs, to give notice and preside at the meeting of the congregation.   The two associate judges filed a dissenting opinion, dismissing the bill at the costs

of plaintiffs. We have before us now the appeal from the decree of the president judge awarding the injunction.

Our power of adjudication in disputes between warring church parties is limited. In such cases we can look into the rules of a church organization only to ascertain the church law, and if that be not in conflict with the law of the land, all we can do is to protect the rights of parties under the law they have made for themselves. Our Brother WILLIAMS has so fully discussed this subject, and so clearly stated the rules that must govern courts in such litigation in the late case of Krecker v. Shirey, 163 Pa. 551, that we need not repeat them.

Each party here claims to be a majority; when this trouble arose the defendants were in office; presumably, they were put there by a majority, and there was no evidence even offered to rebut this presumption. It is admitted their term of office was indefinite, and they could only be deposed by a majority of the members. Assuming that a majority of the members demand the removal of these officers, what method should they legally adopt to effect their purpose? The law is settled that it must be done in compliance with the rules and discipline of the church. " A majority of a church organization may direct and control church matters consistently with the particular and general laws of the organization or denomination to which it belongs, but not in violation of them:" Sutter v. The Church, 42 Pa. 503. The master finds as a fact that every Disciples' congregation is practically independent; other congregations of the same denomination may advise, but there is no superior tribunal of appeal. Both parties concede that they recognize no rule of conduct in cases of dispute except the New Testament. Alexander Campbell, the Disciples' greatest preacher, if not their founder, says, " It (the church) knows nothing of superior or inferior church judicatures, and acknowledges no laws, no canons or government, other than that of the Monarch of the Universe and its laws." Daniel Sommer, an authority in the church, discusses the whole subject, and while he favors an appeal to other churches for advice and aid in allaying church dissensions, he comes to this conclusion: " The question is often asked, have we no right to appeal from the decision of a church? Certainly, the right of appeal is as free as the air we breathe. For our own justification, we may appeal to one church or a dozen, to

one man or a hundred; but among religious people who are strictly congregational in their church government, there is no authority in any tribunal that may be thus selected, especially a tribunal chosen by only one party. The decision of such a tribunal may have a moral weight, but it has no legal authority. There is nothing official about committees, even if mutually chosen. . . . As each family is a separate government by itself, so is each congregation. No other family on earth has a right to come in and dictate to me and my family, and no other congregation on earth has the right to come in and dictate with reference to the affairs of the congregation where I hold my membership."

Many other authorities were put in evidence before the master; the decided weight of them tends to establish the rule in this particular denomination that each congregation is absolutely independent of any legal control by any other congregation, or by the clergy or officers of such other congregation. What are the admitted facts here? Against the protests of defendants, delegations from Eagleville and Lock Haven churches, two ministers, one from Bellefonte and one from Williamsport, met with members of this congregation outside the church, and by a vote deposed these defendants and elected in their places part of these plaintiffs, and approved and continued in office part of them. Where in the rules of the church organization exists the semblance of authority for this proceeding? The master does not point out, and we have failed to find it in the evidence. It is said that Leathers and one of the Gardners were present at one of the hearings before the 25th of June, and had notice of the meeting; this is denied; but assume it to be true, both objected to the meeting when held, and refused to take part. We decline to consider the arguments bearing on the fairness and desire for peace displayed by the respective parties; discussion of this subject would neither determine the existence of authority in the meeting nor the want of it. In the exercise of such a high authority as was attempted here, parties must point us to a clear "thus saith our church law." We are of opinion, the meeting of June 25th was wholly without authority to depose the old officers or to elect new ones.

But, it is asked, if the members represented by these plaintiffs be in a majority, how shall they obtain the rights of a ma-

jority? We reply, by exercising them as members of the congregation, and as the majority, for more than sixty years, has exercised them; the reply to this, perhaps, is, those in possession will exclude us from lawful participation in congregational government. We are averse to assuming that any of the members of this congregation, now that their lawful course of action is pointed out to them, will act with lawlessness; but if peace among members of a christian church be impossible, then the courts are open to the wronged members, as members, and such remedy as the law warrants will be afforded. But the courts cannot sustain wholly unlawful attempts to right even wrongs.

The decree of the court below is reversed and set aside, and the bill is dismissed at costs of plaintiffs: