# Mazaika v. Krauczunas et al., Trustees, Appellant.

*Church law—Trusts and trustees—Real estate—Church property—Congregational elections—Practice—Equity—Issues of fact.*

1. It is the proper function of a chancellor to resolve doubtful questions of fact in the light of the evidence, not to avoid them by reaching a solution of the controversy through methods for which there is no legal warrant.

2. In a proceeding to determine which of two contesting parties were elected trustees by a majority of the male members of a church congregation, of lawful age, at a meeting called to determine by whom the legal title to the church property should be held, the issues of fact presented must be determined by the chancellor upon the evidence produced and the court has no jurisdiction to direct and conduct an election, in court, to determine the real intent of the members of the congregation.

*Church law—Trusts and trustees—Holder of legal title.*

3. A trustee, whether he be prelate or layman, who simply holds the legal title to church property is trustee for no other purpose and has nothing whatever to do with any of the affairs of the congregation or with the property itself, by reason of the fact that he holds the legal title.

Argued May 9, 1910. Appeal, No. 8, Jan. T., 1910, by defendants, from decree of C. P. Lackawanna Co., Nov. T., 1908, No. 1, in case of Alex. Mazaika et al. v. Andrew Krauczunas et al., Trustees. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Bill in equity to compel conveyance of church property. The facts appear in the opinion of the Supreme Court.

*Error assigned* was the decree of the court.

*William Jessup Hand,* with him *A. A. Vosburg,* for appellants.

*John G. Johnson,* with him *Thomas P. Hoban* and *John P. Kelly,* for appellees.

OPINION BY MR. JUSTICE STEWART, July 1, 1910:

This case is a sequel to the case of Krauczunas v. Hoban, reported in 221 Pa. 213. Under the decree in the latter case Rt. Rev. M. J. Hoban, holder of the legal title to the land belonging to St. Joseph's Lithuanian Catholic Congregation of the city of Scranton, was required to convey said legal title to the defendants in the present proceeding, for the reason that a majority of the male members of the congregation, of lawful age, at a meeting called to determine by whom the legal title to the church property should be held, had selected these defendants for this special purpose. This decree was submitted to and the conveyance was made accordingly. Soon thereafter a counter movement was begun to restore the legal title to Bishop Hoban, as trustee. To this end a special meeting of the congregation was called, and held June 8, 1908, at which it was resolved "That Rt. Rev. Michael J. Hoban, Bishop of Scranton, be and is hereby chosen and designated trustee for said St. Joseph's Lithuanian Catholic Congregation of the city of Scranton, Pennsylvania, to hold as such trustee all the property of said congregation, and the title thereto, in accordance with the laws, rules, and usages of the Catholic Church in the diocese of Scranton and State of Pennsylvania." Further, it was resolved, that the trustees then holding the title—these defendants—be requested, authorized and required to execute and deliver to the Rt. Rev. Michael J. Hoban, bishop of Scran-

ton, trustee, a deed for all of said property. At the same meeting the plaintiffs were appointed to take such action in court, law or equity, as might be necessary to compel such reconveyance. The defendants having declined to reconvey in accordance with this action, the plaintiffs, acting under the authority given them at the meeting, filed this present bill to compel a conveyance. The defendants made answer averring, among other things, that the meeting of June 8, 1908, at which the above action had been taken, had not been regularly called; that it was not called by a committee duly elected by the congregation; that it was not held either at the time or place indicated in the call; that a great many members of the congregation had been forcibly and illegally excluded from the meeting; that others who were not members of the congregation were admitted, while certain of the respondents were excluded, and that members of the congregation opposed to any change of trustee who attempted to express their opposition were forcibly ejected from the meeting. It was further averred in the answer, that on the second day following the meeting of June 8, another meeting of the congregation was held pursuant to a call, at which a great majority of the male members were present; that 1,583 out of 1,586 present voted to retain the defendants as trustees, and expressed opposition to any change. To this answer replication was made and issue joined. As will be seen, the pleadings raised several questions of fact as well as of law. Without attempting to indicate all, these are among them: Was the meeting of June 8, 1908, at which action was taken favorable to the selection of Bishop Hoban, called by competent authority? Was it held at the appointed time and place? Was there present at that meeting a majority of the male members of the congregation, of lawful age, and did such majority unite in the action taken? Are the allegations true that members of the congregation in the minority party were forcibly excluded from the meeting, and that intolerance was exercised by the majority and freedom of discussion denied? Several

of these questions apply as well to the meeting of June 10, at which action favorable to the defendants was taken. We have no findings of fact by the chancellor with respect to them, if we except this which appears in the tenth finding, "Neither side knew or had any adequate means of ascertaining the number of male members qualified to vote." Instead of meeting the issues raised by the pleadings, pursuant to an agreement entered into between the parties, the chancellor proceeded to hold a new election, to determine whom the majority preferred to have act as trustee of the title. The reason for this action is thus stated by the chancellor, "This (the present proceeding) it is averred, is to enforce the action of the congregation in the exercise of its right of choice in the matter. Such action is alleged to have been taken June 8, 1908, by a majority of its adult male members at a meeting regularly convened for that purpose. The truth of this averment was challenged by the answer and the validity of the election denied. This appears to raise the only essential fact in dispute. Issue was formally joined and the parties went to trial March 9, of this year. In the course of two or three days it became apparent that if the question was to be determined by a review of the action taken at that meeting, the result would be unsatisfactory and doubtful. That led to a new election at bar by agreement of parties; but for that purpose continuance was had to a later date. In the meantime, the parties did what they could to ascertain who was entitled to vote. The voting began July 9 and continued several days." Here was a clear abdication of judicial function and authority. The learned chancellor correctly enough states an essential question of fact to be determined; but he avoids determining it because, "by a review of the action taken at the meeting [of June 8, 1908] the result would be unsatisfactory and doubtful." It is the proper function of a chancellor to resolve such doubtful questions in the light of the evidence, not to avoid them by reaching a solution of the controversy through methods for which there is no legal

warrant. The inquiry as to the facts had proceeded no further than the taking of the testimony of two witnesses, when the judicial inquiry ceased, and the new election was entered upon, presided over by the chancellor, in open court, continuing uninterruptedly for ten days. The purpose of the election had no relation whatever to the action of the meeting on June 8, but was intended as a substitute, to determine whether in point of fact a majority of the male members of the congregation favored the election of Bishop Hoban as trustee of the title. We are not specially concerned about the manner in which this election was conducted, though it is open to much criticism, nor its results. These appear in the more than 600 pages of the appendix. It is enough to know that the election was extra judicial and conclusive of nothing. The parties to the controversy who consented to the election were without authority to bind the members of the congregation. The appellants were simply the holders of the naked legal title, destitute of any and all authority to act for the congregation. The appellees had no authority except that derived from the meeting that appointed them, and that was to secure the conveyance of a legal title to the church property to Bishop Hoban, by virtue of the action there taken. They were without authority to submit the matter to the hazard of another election. Whether the election concluded those who participated in it, is not a question to be considered. It is conceded that all the members did not participate. It is a matter of no consequence that none of these are here protesting, if such be the fact, for in this proceeding the rights of the individual membership are not to be determined. The objection to the procedure that was observed, is that it offends against public law and policy. What the act of assembly contemplates as the means or method of determining whether a majority of the male members of lawful age favored the election of one not a layman, is a congregational meeting regularly called for that purpose, where the members can act unitedly in their associate

capacity. Any other mode of proceeding, as was said in Shortz v. Unangst, 3 W. & S. 45, would be subversive of the first principles of justice, and leave no safety for the members. Not only so, it was a violent departure from the usages of the congregation, to which neither agreement of the parties, nor sanction of the court itself can give validity. In the absence of any ordained rule or by-law of the congregation governing such proceeding, the congregation's own usages must govern. Twice before had this congregation been called upon to take similar action, and in both instances action was taken at a congregational meeting duly called. The decree entered in the case rests exclusively upon the result derived by the chancellor from the election held before him. Not only had the election no relation to the congregational meeting, but it was not ordered by the congregation, and was participated in by persons who had not been present at the meeting, and whose qualifications were determined by an authority outside of the congregation itself. The case must go back, to be proceeded with sec. reg.; the contending parties to be allowed to introduce such testimony as they can touching the issues raised under the pleadings. From that testimony let the facts be found, and then, should an appeal to this court follow, we will be in a position to make final ruling, but not until then.

Without any disposition to prejudge this case in any of its legal aspects, and certainly not intending so to do, this much may be said which, if it prejudice at all, prejudices equally. If this litigation involves any possible result worth a moment's controversy, it is concealed from our view. This may be a matter which concerns only the parties themselves; but we remark upon it for the reason that the case discloses sufficient to warrant an inference that neither side appreciates the insignificance of the stake for which they are contending. It is difficult to conceive of anyone bearing any relation whatever to a religious body, quite so incapable of intermeddling with the affairs of the congregation, as a trustee who simply holds the legal title to the church property.

Such an one is trustee for no other purpose, and has nothing whatever, by reason of the fact that he holds the legal title, to do with any of the affairs of the congregation, or with the property itself, no matter whether he be prelate or layman. Whoever he be, he holds the title not under or because of any rules or regulation of any ecclesiastical body to which the congregation is affiliated or connected, but under the law of the land which allows the membership to indicate him as trustee. Absolutely without power and without function, he is as far removed from active interference with the property or business of the congregation, as he could possibly be. The ownership of the church property is in the congregation to do with as it pleases, except that it may not divert it from the uses with which it is impressed. Here the uses of this church property have long since been declared, and no matter who may be trustee the property cannot be otherwise appropriated. Were the present decree to stand, and Bishop Hoban to receive a conveyance thereunder, such conveyance would invest him with no right of control over the property whatever. This much needs to be understood, for it is the law. This being so, it is apparent that a victory for either side would be utterly barren of any substantial results. It is a mistake to suppose that a trustee or trustees appointed simply to hold the legal title to church property correspond in any way to trustees elected or appointed to exercise active duty in controlling the affairs of the congregation; and we cannot avoid the conclusion that this unfortunate and expensive litigation has been entered upon because of this clear misconception. If the parties choose to prolong the controversy, it is their right so to do, which will not be questioned. The appeal is sustained; the decree is set aside, and the record is remitted to the court below to be proceeded with in due course. The costs on this appeal proper to be paid by appellees.