# Ryan *v.* Dunzilla, Appellant.

## Ryan, et al., Appellant, *v.* Dunzilla, et al.

*Equity—Religious societies—Church law—Church property—Moneys arising out of church property.*

1. So far as the canons of an ecclesiastical body are in conflict with the laws of the land they must yield to the latter, but when they do not so conflict, they must prevail.

2. The absolute ownership of church property by the congregation, subject to the limitation that it shall not divert it from the uses with which it is impressed carries with it the right of control of moneys arising out of the congregation for the maintenance of the property of the church. Other revenues paid by the members of the congregation for pious uses are governed by the law of the church.

3. In a suit between the archbishop of a Catholic diocese and the congregation of a particular parish a decree enjoining the respondents from taking up a collection at the portals of the church and from interfering with the priest in the issuing of permits for the burial of the dead in the cemetery, will not be reversed where such decree is based upon legal conclusions, not assigned as error, that such collection is in conflict with the laws of the church and that under such law the priest has the sole and exclusive right to say who shall be buried in the cemetery belonging to the congregation, no law of the land being in conflict therewith.

4. In such case it appeared that part of certain moneys in controversy arose out of the sale of lots in cemeteries and for the purchase of permits of burial therein and as rental for the use of rooms in the basement of the church, the balance arising from other sources. *Held,* that moneys from the first mentioned sources belonged to the congregation for church purposes; and that other moneys arising from other sources belonged to the priest under the law of the church.

Argued Feb. 13, 1912. Appeals, No. 348, Jan. T., 1911, and No. 10, Jan. T., 1912, by defendants and plaintiffs, from decree of C. P. Schuylkill Co., June T., 1910, No. 2, in equity, in case of The Right Rev. Edmond F. Prendergast, Archbishop of the Diocese of Philadelphia,

and Rev. A. J. Kaminski v. William Dunzilla, et al. Before FELL, C. J., BROWN, POTTER, ELKIN and STEWART, JJ. Decree modified.

Bill in equity for an injunction. Before BRUMM, J.

The opinion of the Supreme Court states the case.

The court entered the following decree:

And now, May 1, 1911, it is ordered, adjudged and decreed that the defendants be restrained perpetually from taking up a collection at the portals of the church of St. George's Lithuanian Roman Catholic Church of Shenandoah; that the defendants be restrained perpetually from interfering with the priest in the issuing of permits for the burial of the dead in the cemeteries belonging to St. George's Lithuanian Roman Catholic Church of Shenandoah, but that the moneys arising from the sale of lots and for the purchase of permits be paid by the said priest and his successors in office to the treasurer of the congregation of St. George's Lithuanian Roman Catholic Church of Shenandoah, that an accounting be made between the plaintiffs and the defendants for all moneys received by either of them from the inception of this suit to the date of this decree, and that all moneys found to be necessary for the maintenance, the control, and the ownership of the church property, and for the proper enjoyment and use of the same, be paid to the treasurer of the congregation of St. George's Lithuanian Roman Catholic Church of Shenandoah, and the balance, if any, shall be paid to the plaintiff, Rev. A. J. Kaminski, and his successors in offices; that all the taxable costs be paid by the defendants.

*Error assigned* in both appeals was the decree of the court.

*George M. Rhoads* and *A. A. Hirst,* with them *W. F. Lyons,* for The Right Rev. Patrick John Ryan, et al.

*Guy E. Farquhar,* with him *R. H. Koch,* for William Dunzilla, et al.

OPINION BY MR. JUSTICE BROWN, March 10, 1913:

The respondents admit that, under the canons and laws of the Roman Catholic Church, the complainants —the archbishop of the Diocese of Philadelphia and the priest sent by him to St. George's Lithuanian Roman Catholic Church of Shenandoah—are vested with the control and authority which they claim; and this control, as the court below properly held, extends to "everything relating to the congregation, whether it concerns property, spiritual matters, financial affairs, parochial schools or any other question which goes to the government of the parish." But when rights of property are in question, the civil courts will inquire whether the organic rules and forms of proceeding prescribed by the ecclesiastical body have been followed; and, if followed, whether they are in conflict with the law of the land: O'Hara v. Stack, 90 Pa. 477. So far as the canons of the church are in conflict with the law of the land, they must yield to the latter; but, when they do not so conflict, they must prevail. No question arises on these appeals as to the title to church property or its transmission, and the complainants below justly contend on their appeal that Mazaika v. Krauczunas, 229 Pa. 47, and 233 Pa. 138, have little or no bearing on the questions raised. What we are to determine is whether the court below correctly applied the law of the church as to some matters and the law of the land as to others.

The eighth legal conclusion of the learned chancellor, not assigned as error, is that "the custom of collecting ten cents at the portals of the church is in conflict with the laws of the Church of Rome." The right to make such a collection is not given by any law of the land, and the law of the church is, therefore, supreme. Another legal conclusion which has not been assigned as error is that, under the laws of the church, the priest

or rector has the sole and exclusive right to say who shall be buried in the cemetery belonging to the congregation. No law of the land conflicts with this, and we, therefore, dismiss, without further comment, the complaint of the respondents of so much of the decree as enjoins them from taking up the collection at the portals of the church and from interfering with the priest in the issuing of permits for the burial of the dead in the cemetery. In support of the balance of the decree the learned chancellor said, inter alia: "There can be no question, under the act of assembly itself and under these two decisions of the Supreme Court (Krauczunas v. Hoban, 221 Pa. 213, and Mazaika v. Krauczunas, 229 Pa. 47), that the congregation has absolute control of the real property of the church. As said by the Supreme Court in Krauczunas v. Hoban, supra: 'This legislation in most unequivocal terms confirms to every religious society, incorporated or unincorporated, the absolute ownership of its property, subject only to the condition that it shall not divert it from the uses and purposes and trusts to which it may have been lawfully dedicated.' And, as is said in Mazaika v. Krauczunas, supra, 'The ownership of the church property is in the congregation, to do with it as it pleases, except that it may not divert it from the uses with which it is impressed.' How could the congregation have absolute ownership of its property unless it had the disposal of the moneys arising to care for that property within its own control? If the contention of the plaintiff is correct, and he has the absolute disposition of all the moneys collected in this church, the absolute ownership of the property would be of no avail to the congregation, for where could they secure the money, under those circumstances, to repair, to light, to heat and to do all the acts necessary to keep this property in perfect condition and to provide for its maintenance? ......If the congregation has the absolute ownership of the property, it necessarily flows from this ownership

that they must have the money arising for its mainte-
nance under their control and supervision, else the vest-
ing of the absolute ownership of the property in the con-
gregation would be vain.  There can be only one con-
clusion to this contention, and that is, in pursuance of
this act of assembly and the authoritative decisions of
the Supreme Court, as above quoted, the absolute own-
ership of the property of St. George's Lithuanian Roman
Catholic Church of Shenandoah is in the congregation,
subject to their control; and this, of necessity, gives to
them the right of control of the moneys arising out of
the congregation for the maintenance of the property
of the church.  All other moneys arising from any source
whatsoever, in the present controversy, belong to the
priest for his disposition, for, as quoted above, the law
of the church governs and over it we have no control
whatever except where it is in conflict with the law of
the land; and, therefore, we can order no disposition of
any moneys, or control any of the decrees of the church
other than those which are in conflict with the law of the
land."  While all that is said in the foregoing as to the
congregation's control and ownership of the real estate
of the church is correct, we cannot concur in that por-
tion of it which led to the decree limiting the right
of the respondents to retain from the revenues received
by them only such sum or sums as may "be necessary
for the maintenance, the control and ownership of the
church property and for the proper enjoyment and use
of the same."

The seventh finding of fact, not assigned as error, is
as follows: "The regular sources of the congregation's
revenue consisted of annual dues paid by each male
member; full membership dues of $21.25, which were
paid by each male member who wished to become a full
member; a collection of ten cents made at the door of
the church, from each male member of the congregation
entering the church on Sabbath days, excepting full
members, old men, cripples, sickly persons and Lithu-

anians, who had not been in the parish over three
months; plate collections taken inside of the church;
rentals for the use of the rooms in the basement of the
church, wherein societies composed only of members of
the congregation meet; and moneys received for ceme-
tery lots and burial permits; all of which revenues were
put into the treasury of the church and were disbursed
for such purposes, upon orders or checks signed by the
rector and two officers, or signed by three officers of the
congregation. The accounts of the treasurer have been
regularly audited, and the present treasurer is under
bond in the sum of ten thousand dollars."

Legislation has placed in the lay members of the
congregation of St. George's Lithuanian Roman Cath-
olic Church of Shenandoah the ownership of the church
property, and that ownership necessarily carries with it
the right to receive and control, for church purposes, the
revenues derived from the church properties. The other
revenues set forth in the above findings are paid by the
members of the congregation for pious uses, and are,
therefore, to be turned over to the priest, for the law of
the church gives him control of them, and no law of
the land takes it from him. The appeal of the respond-
ents must be sustained in part. That of the complain-
ants is dismissed, and the decree is now modified by
ordering, adjudging and decreeing that the defendants
be perpetually restrained from taking up the collection
at the portals of the church of St. George's Lithuanian
Roman Catholic Church of Shenandoah; that they be
perpetually restrained from interfering with the priest
of said church in issuing permits for the burial of the
dead in the cemeteries belonging to the said church;
that the moneys arising from the sale of lots in said
cemeteries and for the purchase of permits of burial
therein, together with the rentals for the use of the
rooms in the basement of the church wherein societies
composed only of members of the congregation meet,
be paid to the treasurer of the congregation of the

church; that there be an accounting between the plaintiffs and defendants of all moneys received by them or either of them from the inception of this suit to the date of this decree, and, upon such accounting, all moneys heretofore received from the sale of lots in the said cemeteries and for the purchase of permits for burial therein, together with all moneys received as rentals for the use of the rooms in the basement of the church wherein societies composed only of members of the congregation meet, are to be paid to the treasurer of the said church for church purposes, and all moneys received from other sources are to be paid to the complainant, Rev. A. J. Kaminski, or his successor in office, the costs below and on this appeal to be paid out of the funds of the church in the hands of its treasurer.