## SIMS v. GREENE.

### No. 9342.

Circuit Court of Appeals, Third Circuit.

Argued Feb. 13, 1947.

Decided March 4, 1947.

---

Raymond Pace Alexander, of Philadelphia, Pa., for appellant.

Walter A. Gay, of Philadelphia, Pa., for appellee.

Before BIGGS, GOODRICH and KALODNER, Circuit Judges.

BIGGS, Circuit Judge.

On December 2, 1946, the plaintiff, David H. Sims, filed a complaint against the defendant, Sherman L. Greene, alleging that he, Sims, is a citizen of Pennsylvania and a bishop of the African Methodist Episcopal Church and that he was assigned by a General Conference[1] of the AME Church held in 1944 to the First Episcopal District[2] to serve as the presiding bishop of that district until the next General Conference to be held in 1948; that the defendant, another bishop of the same church, has appeared in the First

---

[1] See "AME Discipline", published by the "AME Book Concern", Philadelphia, Pennsylvania, pp. 178 et seq.

[2] For the extent of the First Episcopal District, see the Discipline at p. 495. It is admitted that the district includes Philadelphia.

Episcopal District and within the jurisdiction of the court below and has proclaimed that he is the presiding bishop of the First District and is attempting to function as such; that by reason of the foregoing the plaintiff's office and functions as presiding bishop and his salary and emoluments are threatened as is the administration of the church and its conferences[3] in the district; and that irreparable injury will result to the church, to its property and to the plaintiff unless the defendant is enjoined from pursuing the course complained of. An affidavit supporting the allegations of the complaint was filed with it.

On December 2, 1946, the court below, ex parte, issued an order restraining the defendant from interfering with the plaintiff as the presiding bishop of the district. The restraint originally imposed was continued by order for an additional ten days, to expire on December 22, 1946. See 28 U.S.C.A. § 381. On December 20 the defendant consented to the restraint being extended until January 14, 1947 and the court made an order to such effect on December 20, 1946. See note 7 infra.

On December 24, 1946 the defendant filed his answer and with it a counterclaim containing prayers for affirmative relief. He admitted the allegations of the amended[4] complaint in respect to diversity of citizenship and jurisdictional amount, but asserted that the plaintiff was no longer a bishop of the AME Church because he had been unfrocked by an extra session[5] of the General Conference and by the Episcopal Committee[6] meeting in Little Rock, Arkansas, about November 20, 1946; that he, the defendant, had been assigned by the extra session of the General Conference and by the Bishops' Council to the First Episcopal District as its presiding bishop; that by virtue of the foregoing he is the lawful presiding bishop of the district and his right to that office and its emoluments and his administration of the church and its property within the district are imperilled by the plaintiff's actions. The counterclaim ends with a prayer that the plaintiff be enjoined from interfering with the defendant.

On January 13, 1947 the court below extended the restraining order until January 24[7] and proceeded to a hearing on the question of whether or not a preliminary injunction should be granted.[8] This hearing continued from January 13 to January 17, inclusive, and twelve hundred pages of argument, colloquy and testimony were taken down and have been transcribed. On January 17, at the close of the day the defendant's counsel made a motion to dissolve the restraint. The court directed him to withhold his motion, stating that he would renew the order "in due time". The transcript shows that counsel for the defendant then said, "Your Honor, I ask for an extension [sic] of that order." In the notice of appeal defendant's counsel in a kind of addendum, states, "the correct word was 'dissolution'". The record demonstrates that counsel meant to say "dissolution" or "vacation", and that at the time indicated he in fact made a motion to dissolve the restraining order.

On January 23, 1947 the defendant appealed to this court from the restraining order and moved for a stay of all pro-

---

[3] See the Discipline, pp. 178 et seq.

[4] An amended complaint was filed on December 6, 1946. The allegations of the original complaint and those of the amended complaint may be treated as substantially similar for the purposes of this opinion.

[5] See the Discipline at p. 182.

[6] See the Discipline at pp. 186, 258–260.

[7] The dates of the orders granting or continuing the restraint are as follows:

December 2, 1946, restraining order issued, to expire on December 12, 1946.

December 9, 1946, order entered extending the restraining order for a period of ten days from December 12, 1946, viz., December 22, 1946.

On December 20, 1946, the restraining order was continued by consent until January 14, 1947.

On January 13, 1947, the restraining order was continued until January 24, 1947.

On January 23, 1947, the restraining order was continued until February 3, 1947.

[8] On December 19, 1946 the trial court suggested that it might be desirable to "consolidate" the hearing "into a preliminary and final proceeding", i. e., to proceed to final hearing. It does not appear, however, that this suggestion was acted upon.

ceedings in the District Court.[9] We stayed the proceedings in the District Court and restrained the defendant from acting as the presiding bishop of the First Episcopal District pending the disposition of the appeal, setting February 13 as the day for argument.

The defendant contends that the court below was without jurisdiction or power to hear or determine the cause and that this appears not only from the pleading but also from the testimony. He asserts also that the plaintiff has alleged no facts upon which a finding of irreparable damage can be made and contends also, as we apprehend his argument, that the temporary restraining order, continued without the consent of the defendant after January 14, is in substance a temporary injunction issued illegally since no findings of fact and conclusions of law were made by the court below as 'required by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The defendant contends also that the court below made no findings of fact and expressed no conclusions of law regarding the vital issue of whether or not it had jurisdiction over the subject matter of the suit.

The plaintiff asserts that the order of December 2, 1946, continued in effect as shown in note 7, supra, is only a temporary restraining order and as such is not appealable; that it was providently entered; and that the court below had jurisdiction not only of the parties but also of the subject matter, the court having made a finding to such effect. He contends that the appeal must be dismissed.

■ Jurisdiction in the case at bar is based on diversity of citizenship. It was incumbent upon the court below, as it is on this court, to apply the law of the forum, that is to say, the law of Pennsylvania. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477. The pleadings in the case at bar present a justiciable controversy to be determined by the law of Pennsylvania. Under that law the only question, procedural incidents aside, is whether the plaintiff was unfrocked as a bishop and the defendant was assigned as his successor to the First Episcopal District according to the Discipline of the AME Church.[10]

■ The law of Pennsylvania in this connection was well summed up by Mr. Justice Williams speaking for the Supreme Court of Pennsylvania in Krecker v. Shirey, 163 Pa. 534, 30 A. 440, 29 L.R.A. 476. For brevity's sake we paraphrase it here as follows. The power of a civil court, as distinguished from that of an ecclesiastical tribunal, in respect to disputes between warring church factions is limited to an ascertainment of the pertinent church law, to inquiry as to whether or not that law has been conformed with by the churchly tribunal or judicatory, and to the enforcement of the judgment or order of the religious tribunal or judicatory if the order or judgment of the tribunal or judicatory of the church has been reached in accordance with the law of the church. The principle of decision just enunciated is subject to a further limitation not here at issue, viz., that the canons of the ecclesiastical body may not be contrary to the law of the land.[11] See also Long v. Harvey, 177 Pa. 473, 35 A. 869, 34 L.R.A.

---

[9] At the same time the defendant filed a petition for a writ of prohibition or for a writ of peremptory mandamus to prohibit or restrain the trial judge from proceeding with the case on the ground that he had demonstrated bias and prejudice. At or about the same time the defendant filed an affidavit of bias and prejudice in the court below pursuant to Section 21 of the Judicial Code, 28 U.S.C.A. § 25. A rule issued, was made returnable on February 10, 1947, and was set down to be heard on February 13. Our disposition of that case (In re Petition of Greene, 3 Cir., 160 F.2d 517)

is dealt with in an opinion filed concurrently with this.

[10] As indicated in earlier notes in this opinion the doctrine and rules of the church, that is to say, its "Discipline" is embodied in the AME Discipline, published by order of the General Conference. See note 1, supra.

[11] It is not contended by either party that any of the canons contained in the AME Discipline are contrary to the law of the land or that of Pennsylvania. In Long v. Harvey, 177 Pa. 473, 479, 35 A. 869, 870, 34 L.R.A. 169, 55 Am.St.Rep. 733. Mr. Justice Dean stated, "Our pow-

516

169, 55 Am.St.Rep. 733; Wallace v. Presbyterian Church, 201 Pa. 292, 50 A. 762; Ryan v. Dunzilla, 239 Pa. 486, 86 A. 1089; Furmanski v. Iwanowski, 265 Pa. 1, 108 A. 27; Canovaro v. Brothers of Hermits of St. Augustine, 326 Pa. 76, 86, 191 A. 140, 146; Post v. Dougherty, 326 Pa. 97, 102, 191 A. 151, 153. The general law indeed does not differ in any substantial respect from that of Pennsylvania. See Watson v. Jones, 13 Wall. 679, 731, 20 L.Ed. 666; and Zollmann, American Church Law, Ch. 13, "Clergyman", Sections 448, 461, 462, 469, 470, 471, 473, 479 and 480.

■ The nature of some of the questions which the court below must answer on the issue of whether or not the churchly judicatories, such as the General Conference and the Episcopal Committee of the AME Church, have conformed with the rules laid down in the AME Discipline are suggested in the opinion of Mr. Justice Stewart in Mazaika v. Krauczunas, 229 Pa. 47, 49, 77 A. 1102, 1103, 31 L.R.A., N.S., 686. These questions include, but are not limited by the following. Was the plaintiff duly assigned to the First Episcopal District by the General Conference of 1944? Was the extra session of the General Conference which purported to unfrock the plaintiff called as required by the Discipline of the AME Church? Was the extra session held at a time and place required by the Discipline? Was the action of the Bishops' Council in accordance with the Discipline? The determination of these and like questions will determine the controversy in the case at bar in accordance with the law of Pennsylvania. *Not* pertinent to any issue presented by the pleadings is the moral character or fitness for ecclesiastical office of the respective contestants. *Not* pertinent are the records of the law suits which the plaintiff, the defendant or the AME Church have indulged in. No *res judicata* is pleaded. *Not* pertinent is the manner in which the plaintiff or defendant conducted themselves in the First District or elsewhere. *Not* pertinent is the manner or way in which the parties used the funds of the church. *Not* pertinent are the marital or domestic relations of the parties. Questions of moral fitness rest and will rest with the ecclesiastical tribunals and may not be tried in the court below.[12] This limitation should shorten the proceedings greatly.

■ We come next to questions respecting the nature and effect of the restraining order issued first upon December 2, 1946 and still in force. In extending the restraint the court below did not observe that provision of Rule 65(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which states, "The reasons for the extension shall be entered of record." The court also disregarded the following provision of Rule 65(b), "In case a temporary restraining order is granted without notice, the motion for a preliminary injunction shall be set down for hearing at the earliest possible time * * *." It is settled that no temporary restraining order may be continued beyond twenty days unless the party against whom the order is directed consents that it may be extended for a longer period. See Section 381 of 28 U.S.C.A. and Rule 65(b). The consent of the defendant in the instant case to the extension of the restraining order was not continued past January

er of adjudication in disputes between warring church parties is limited. In such cases we can look into the rules of a church organization only to ascertain the church law, and, if that be not in conflict with the law of the land, all we can do is to protect the rights of parties under the law they have made for themselves."

[12] We observe that the learned District Judge while frequently enunciating substantially identical principles of law as those stated here, from time to time seemed to believe that the moral character of the plaintiff (and by inference that of the defendant) was an issue in the case. He was led into this error by the vigorous attack of counsel for the defendant upon the character and fitness for ecclesiastical office of the plaintiff. This attack far exceeded any test of credibility of a witness on cross-examination. The moral character of the plaintiff and defendant rested and rests with the ecclesiastical tribunals. The determinations as to moral fitness for ecclesiastical office if reached in accordance with the AME Discipline, is not subject to question in the court below.

14, 1947. It is also the law that the relief to be afforded by Section 129 of the Judicial Code, 28 U.S.C.A. § 227, providing for appeals from injunctions, is not limited by the terminology employed by the trial court. The relief to be afforded by the section looks to the substantial effect of the order made. Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176.

When a restraining order, purporting to be "temporary" is continued for a substantial length of time past the period prescribed by Section 381 of 28 U.S.C.A. without the consent of the party against which it issued and without the safeguards prescribed by Rule 65(b) it ceases to be a "temporary restraining order" within the purview of that section and becomes a preliminary injunction which cannot be maintained unless the court issuing it sets out the findings of fact and the conclusions of law which constitute the grounds for its action as required by Rule 52(a).

In our opinion the restraining order now in effect in the District Court must be treated as a temporary injunction, issued without the consent of the defendant, in the face of his motion to dissolve it, and contrary to the provisions of Rule 52(a). It is clear that an appeal lies from a temporary injunction. Deckert v. Independence Shares Corporation, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 182. The appeal at bar therefore may not be dismissed and the order restraining the defendant must be reversed. Our conclusions in this regard, however, are not intended to indicate that the court below may not enter a temporary injunction in accordance with the provisions of Section 381 of 28 U.S.C.A. and Rules 52 and 65, if the facts and the law warrant such a course. Attention of the court below is directed to the long line of pertinent authority culminating in Yakus v. United States, 321 U.S. 414, 439, 440, 64 S.Ct. 660, 88 L.Ed. 834, and to Chapters 52 and 65 of Moore's Federal Practice and to the authorities therein cited.

In view of the fact that the defendant has filed an answer and a counterclaim we can perceive no reason why the court below should not, as it itself suggested,[13] proceed to final hearing. A prompt disposition of the cause is necessary in the public interest. The witnesses should not be permitted to give extended irrelevant testimony. Counsel should be restricted to relevant examination and cross-examination. The proceedings in the court below, as the record shows, were repeatedly interrupted by demonstrations by the spectators and the learned trial judge took no strong step to prevent such demonstrations. The dignity and decorum of a court of the United States must be maintained at all times.

The court below should sit from day to day and without unnecessary interruptions until the hearing is concluded.

The motion to dismiss the appeal will be denied. The order appealed from will be reversed. The stay order entered by this court on January 31, 1947 will be vacated. The court below will be directed to sit from day to day until the hearing is concluded.