See also, D.C., 33 F.R.D. 21.

**INTERNATIONAL PRODUCTS CORPORATION, Plaintiff-Appellee,**

v.

Charles A. KOONS, and Jane Roe, Richard Roe and Charles A. Koons, individually and as co-partners doing business under the firm name and style of Charles A. Koons & Company, Defendants-Appellants.

No. 159, Docket 28430.

United States Court of Appeals Second Circuit.

Argued Oct. 4, 1963.

Decided Oct. 28, 1963.

**404**

Gustave B. Garfield, Francis X. Stephens, Jr., New York City, for defendants-appellants.

Robert B. Block, Pomerantz, Levy, Haudek & Block, New York City, for plaintiff-appellee.

Arthur S. Olick, Asst. U. S. Atty., Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, for the United States.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge.

This is an appeal, allegedly pursuant to 28 U.S.C. § 1292(a) (1), from an order of Judge Metzner in an action brought in the District Court for the Southern District of New York, on the basis of diverse citizenship, by International Products Corporation against Koons, its former president, and others. Koons has counter-claimed and also has instituted a suit for libel against International and its directors. The order concerns a deposition of Jose Seldes, now president of International, taken at defendants' instance, in which questions were asked as to payments by officers of International to officials of a South American government, and related matters; for convenience we quote the ordering portions in the margin.[1]

The proceedings leading to the order began with an order to show cause signed by Judge Croake on May 24, 1963, itself

1. "ORDERED, that the defendants, their attorney, Francis X. Stephens, Jr., Esq., their counsel, Gustave B. Garfield, Esq., and the Bar Association Reporting Service, and any of their representatives or employees, be enjoined from publishing or disclosing to any third party any of the testimony, documents or writing con-

tained or referred to in any of the depositions in the action or documents or writings produced or submitted to this Court, concerning payments to officials of any South American Government, but not restricting the defendants in the use of the discovered information, documents or writing, for trial preparation, includ-

providing for similar relief pending disposition of the motion which was to be heard on June 6; the order to show cause directed that service be made not only upon defendants and their counsel but also upon the Legal Adviser to the Department of State and the Deputy Attorney General. The moving affidavit had claimed that the described material, if publicized in South America, not merely "could be extremely embarrassing and cause great inconvenience and hardship to International and Jose Seldes" but "would be contrary to the best interests of the foreign policy of the United States," and that the affiant had "been advised that the Department of State has been informed of this situation and has requested that it and the Department of Justice be notified of this application in order that the Court might ascertain the position of the United States Government with respect thereto." On June 5, the Assistant Secretary of State for In-

ter-American Affairs sent the Attorney General a letter which, after referring to the action and the order to show cause, requested the Attorney General to support International's attempt to preclude disclosure.[2] The next day the United States Attorney for the Southern District of New York filed a Suggestion of Interest of the United States at the direction of the Attorney General pursuant to 5 U.S.C. § 316. A copy of the Assistant Secretary's letter was attached, and the United States Attorney submitted "to the Court that an order limiting disclosure, as described in this Court's order to show cause, dated May 24, 1963, would further the foreign policy objective of the United States." Appellants contend that the Suggestion of Interest was unauthorized by 5 U.S.C. § 316 and that the order deprived them of rights to freedom of speech and to proper preparation of their case which are guaranteed by the First and Fifth Amendments.

ing depositions of witnesses and pre-trial discovery in connection therewith, or for the trial proper of this action or any other lawsuit in the City, State, or Federal courts in the United States, the use in other lawsuits, however, being subject to the aforesaid restrictions pertaining to disclosure to parties unrelated to the lawsuit in which such information, documents or writings is used; and it is further

"ORDERED, that after the deposition of Jose Seldes, held on January 14, 1963, May 23, 1963, and any continuance thereof, and the exhibits marked in connection therewith, is sealed, said deposition shall only be opened by order of this Court; and it is further

"ORDERED, that the affidavit of Gustave B. Garfield, Esq., dated April 3, 1963, and the exhibit thereto, submitted in testimony, and now on file in this Court, be impounded by this Court and be subject to the same restrictions applicable to the said deposition of Jose Seldes; and it is further

"ORDERED, that all papers on this motion, including the Order to Show Cause, signed by the Honorable Thomas F. Croake, United States District Judge, and dated May 24, 1963, be impounded by this Court and be subject to the same restrictions applicable to the said deposition of Jose Seldes."

Garfield's affidavit of April 3, 1963, referred to in the penultimate paragraph, was made in support of a motion to compel Seldes to answer certain questions.

2. The letter said in relevant part:
"The Department of State understands that certain payments, allegedly improper, may have been made by parties or deponents in this litigation to officials of a friendly South American Government. Disclosures and publication to the public at large of the facts alleged in the course of the pretrial proceedings could, in the opinion of the Department of State, lead the Government of the aforesaid friendly country to react in a manner inimical to private American business interests in that country and contrary to the foreign policy objective of the United States.

"Accordingly, this Department requests that you support the attempt to preclude disclosure of the information described above, and that you bring to the attention of the Court the undesirability of premature public disclosure of these allegations.

"This request is subject, of course, to the recognized right of interested parties to apply in the future for orders releasing such information as the interests of justice may require."

■ We must deal first with appealability. Appellants claim the order was an injunction *pendente lite* appealable under 28 U.S.C. § 1292(a) (1). Appellee responds that the order was simply a pre-trial order under F.R.Civ.Proc. 30 (b), which authorizes the court to seal a deposition and to "make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression"; it calls attention to some of the decisions cited below that the mere presence of words of restraint or direction in an order that is only a step in an action does not make § 1292(a) (1) applicable. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955); Fleischer v. Phillips, 264 F.2d 515, 516 (2 Cir.), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959); Armstrong-Norwalk Rubber Corp. v. Local 283, United Rubber Workers, 269 F.2d 618, 621 (2 Cir. 1959); Greenstein v. National Skirt & Sportswear Ass'n, 274 F.2d 430 (2 Cir. 1960); Grant v. United States, 282 F.2d 165, 169 (2 Cir. 1960); Taylor v. Board of Educ., 288 F.2d 600, 604 (2 Cir.), cert. denied, 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961); Lummus Co. v. Commonwealth Oil Refining Co., 297 F.2d 80, 84–86 (2 Cir. 1961), cert. denied, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962). These decisions make it plain, for example, that an order sealing a deposition would not be rendered appealable by the addition of a direction to those who attended its taking to refrain from disclosing what they had heard. See 6 Moore, Federal Practice (1953), pp. 46 and 147, and cases there cited. But that does not altogether settle the issue here, since the order enjoined defendants from utilizing not only the deposition but also documents or writings which they had themselves produced or submitted. The single order entered by the district judge might therefore be viewed as in effect two orders: one under F.R.Civ.Proc. 30

(b), which is not appealable, and another going beyond the authority of the Rule, which is. Support for doing this might be sought in the principle that when a distinction has to be drawn between a temporary restraining order, which is, not appealable, and a preliminary injunction, which is, "the label put on the order by the trial court is not decisive," 3 Barron & Holtzoff, Federal Practice and Procedure (Wright ed. 1958) § 1440, at 509. See Sims v. Greene, 160 F.2d 512 (3 Cir. 1947); Connell v. Dulien Steel Products, Inc., 240 F.2d 414, 417–418 (5 Cir. 1957), cert. denied, 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958); Pennsylvania Motor Truck Ass'n v. Port of Philadelphia Marine Terminal Ass'n, 276 F.2d 931 (3 Cir. 1960); Parker v. Columbia Broadcasting System, 320 F.2d 937 (2 Cir. 1963).

■■ We think it better, in line with our prior decisions, to continue to read § 1292(a) (1) as relating to injunctions which give or aid in giving some or all of the substantive relief sought by a complaint (including stays of proceedings "at law," as in Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942)) and not as including restraints or directions in orders concerning the conduct of the parties or their counsel, unrelated to the substantive issues in the action, while awaiting trial.[3] As explained in Baltimore Contractors, Inc. v. Bodinger, supra, 348 U.S. at 181, 75 S.Ct. at 252 and Grant v. United States, supra, 282 F.2d at 169, such a construction provides a better fit with the language of the statute, "where, upon a hearing in equity in a district court," as this first appeared in § 7 of the Evarts Act, c. 517, 26 Stat. 828 (1891) and later in the Judicial Code of 1911, § 129, 36 Stat. 1134; with the conclusion that the omission of the words "in equity" in the Act of February 13,

---

3. This conclusion that the order was not an "injunction" in the sense used in the federal statutes and rules also answers appellants' contentions as to alleged violations of F.R.Civ.Proc. 65.

1925, 43 Stat. 937, "was not intended to remove that limitation," Schoenamsgruber v. Hamburg American Line, 294 U.S. 454, 457, fn. 3, 55 S.Ct. 475, 477, 79 L.Ed. 989 (1935); and with the policy considerations which led Congress to create this exception to the federal final judgment rule. Furthermore, to read § 1292(a) (1) so broadly as to include an order, purportedly under F.R.Civ.Proc. 30(b), which grants injunctive relief beyond what the Rule authorizes, would also bring within the sweep of the statute orders denying requests for such relief, although there would be no such need for appellate intervention as is created by appellants' claim that the instant order violates their constitutional rights, and thus to extend our jurisdiction under § 1292(a) (1) would seem quite inconsistent with the federal policy of finality. A decision like Sims v. Greene, supra, that what had been labelled a temporary restraining order was appealable as a temporary injunction, does not run counter to what we deem the correct construction of the statute, since the order related to the very equitable relief sought by the complaint. Neither would we regard the instant order as falling "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 545–547, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), as we recently did in National Equipment Rental, Ltd. v. Mercury Typesetting Co., 323 F.2d 784 (2 Cir., 1963).

■ It does not follow, however, that an order purportedly made under F.R.Civ.Proc. 30(b) which exceeds the power there given to a district court is al-

together beyond appellate scrutiny. The normal remedy for action taken in excess of jurisdiction is mandamus. See Rabekoff v. Lazere & Co., 325 F.2d 865, 867 fn. 1 (2 Cir. 1963). In contrast with at least one other circuit, this court has generally declined to consider an appeal from a nonappealable order as a petition for mandamus. See the authorities cited in United States v. O'Connor, 291 F.2d 520, 523–524 (2 Cir. 1961), in which we did so consider an unauthorized appeal in a case where the judge had died. As indicated in the O'Connor opinion, the only justification for what has been thought to be a rather formalistic attitude on our part, see 6 Moore, Federal Practice (1953 ed.), p. 93, is a desire to afford an opportunity for response by the judge, in addition to that made by the party favored by his order. Since this opportunity is rarely availed of, a suitable accommodation can be reached by treating such an appeal, in an appropriate case, as a motion for leave to file a petition for mandamus.[4] An expression of this Court's views on such a motion will generally obviate any need for a petition or a writ, while still leaving it open to the judge to await a formal petition in the rare case where he wishes to be heard.

■ The portion of the order which seals the deposition of Seldes and limits defendants and others in their use of information obtained therefrom was plainly authorized by F.R.Civ.Proc. 30(b), and we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another by use of the court's processes. Whether or not the Rule itself authorizes so much of the order as also seals all affidavits submitted by defendants on various motions, we have no question as to the court's jurisdiction to do this under the inherent

---

4. This would seem to us to have been the appropriate course in Parker v. Columbia Broadcasting System, supra. The Parker case came before the court without formal briefs. The only question considered as to appealability was whether the order under appeal was a temporary restraining order or a preliminary injunction—not whether it was the kind of command that constituted an "injunction" within § 1292 (a) (1).

"equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices," Gumbel v. Pitkin, 124 U.S. 131, 144, 8 S.Ct. 379, 31 L.Ed. 374 (1888); Parker v. Columbia Broadcasting System, supra, 320 F.2d at 938, or as to the propriety of the exercise of discretion here. Even though the affidavits were defendants' own productions, their quasi-official appearance might give them more weight with the uninformed than they were entitled to receive, and newspapers might feel freer to publish them, under the privilege to report judicial proceedings, than extra-judicial statements.

What causes concern here is that the order went further and curtailed disclosure of information and writings which defendants and their counsel possessed before they sought to take Seldes' deposition. We fail to see how the use of such documents or information in arguing motions can justify an order preventing defendants and their counsel from exercising their First Amendment rights to disclose such documents and information free of governmental restraint. Indeed, so far as concerns any claim based on the private interests of International or of Seldes, that question was settled against appellee by our decision in the Parker case, supra, 320 F.2d at 939, a few weeks after the order here under attack was entered. The issue that remains is whether any different conclusion is called for in this case because of the Suggestion of Interest of the United States.

■ Appellants claim in the first instance that the suggestion was unauthorized since the United States has no financial interest in the litigation. But the statute, 5 U.S.C. § 316, is not limited by its terms to cases of financial interest; it authorizes the Attorney General to send any officer of the Department of Justice "to attend to the interests of the United States in any suit pending in any of the courts of the United States, or in the courts of any State * * *." Long before the present statute, which derives from the Act of June 22, 1870, c. 150, § 5, 16 Stat. 162, the Attorney General had submitted suggestions as to the immunity of the property of foreign sovereigns, The Schooner Exchange v. M'Faddon, 7 Cranch 116, 147, 11 U.S. 116, 147, 3 L. Ed. 287 (1812), as he has frequently done thereafter. Yet "the interests of the United States" in such cases are simply its interests in friendly intercourse with other nations and in avoiding reprisals by them—the same interests asserted here.[5]

■ Whatever the case may be as to suggestions of sovereign immunity, see American Law Institute, Restatement of Foreign Relations Law (Proposed Official Draft), § 75 (1962), it is plain that the suggestion here did not bind the court and certainly did not relieve it of the necessity of considering whether the action proposed to be taken would violate the First Amendment. We know of no authority that a court may restrain a private citizen in peace time from giving vent to his views, or publicizing his own information, as to the conduct of officials of foreign governments—any more than it may exert prior restraint on his publication of views concerning officials of our own. Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1934). The facts here are far, indeed, from the "exceptional cases" of valid prior restraints recognized in Near—"No one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of

---

5. For other types of suggestions of interest on behalf of the Department of State, see Clark v. Allen, 331 U.S. 503, 67 S.Ct. 1431, 91 L.Ed. 1633 (1947); Ivancevic v. Artukovic, 211 F.2d 565, 566, fn. 4 (9 Cir.), cert. denied, 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 698 (1954); Pierre v. Eastern Air Lines, Inc., 152 F.Supp. 486 (D. N.J.1957); Note, Federal Intervention in Private Actions Involving the Public Interest, 65 Harv.L.Rev. 319 (1951); Bilder, The Office of the Legal Adviser, 56 Am.J.Int'l Law 633, 676-78 (1962).

troops," 283 U.S. at 716, 83 S.Ct. 631, 75 L.Ed. 1357; we need not attempt to determine just where the line runs. The conduct of our country's international relations might indeed be somewhat easier if citizens could be prevented from publicly reflecting on officials of foreign governments even when their information had been privately obtained. But the price of any such facilitation is higher than we have chosen to pay; we rely instead on the responsibility of the press and on the ability of the foreign service to explain to other governments that our Constitution does not permit such suppression of private thought.[6]

We therefore suggest that the District Court modify its order so as to make it plain that no restrictions are imposed on the freedom of the persons named therein to make whatever use they wish of writings (other than papers filed in court) or information which have come into their possession otherwise than through the court's processes; if this is not done, as we are confident that it will be, appellants may apply for a writ. Since the briefs and appendices of the parties contain some matter the publicizing of which was properly restricted the Clerk is directed to obtain and impound all copies of the same. Appellants may recover their costs as on appeal.

---

**6.** Although we sustain the power of the Attorney General to submit the State Department's letter, the case raises a question, already mooted as to suggestions of sovereign immunity, see Cardozo, Sovereign Immunity: The Plaintiff Deserves a Day in Court, 67 Harv.L.Rev. 608, 617–18 (1954), whether the Department of State ought not adopt procedures—which could be quite informal—to assure a hearing of the other side before it moves into a case like this. Although a hearing is not required by statute, neither § 4 nor § 5 of the Administrative Procedure Act being applicable, the weight properly given by the courts to representations from the Department of State would appear to make it desirable that, before deciding to interpose its views in a private litigation, the Department normally should hear why it ought not as well as why it ought. It seems not unlikely that if appellants had been given an opportunity to present their views, the Department might have concluded that, in the light of considerations which it has regarded as generally militating against its intervention in private litigation, well described in Bilder, supra, 56 Am.J.Int'l Law at 678, the interests of the United States were not in such jeopardy as to warrant the action taken here, or, at least, that the Government should not indorse the full relief sought. However, the order to show cause should have alerted appellants to the likelihood of action by the Department of State, and there is nothing to indicate a request on their part for a conference with the Legal Adviser. See American Law Institute Restatement of Foreign Relations Law, Proposed Official Draft, Reporters' Notes on § 74.