In re Isaac SILVERMAN, Bankrupt.

Bankruptcy No. 77 B 2988.

United States Bankruptcy Court,
S.D. New York.

Jan. 5, 1984.

Barr & Faerber, Spring Valley, N.Y., for Isaac Silverman.

Weil, Gotshal & Manges, New York City, for Joseph S. Steinberg, David Cumming, Edwin Marks and Martin J. Bienenstock, movants.

## DECISION ON MOTION FOR PROTECTIVE ORDER TO QUASH SUBPOENAS AND VACATE ORDERS AUTHORIZING BANKRUPTCY RULE 2004 EXAMINATIONS.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

It is conceded that this adjudicated bankrupt under the now repealed Bankruptcy Act of 1898, as amended, has the right to examine before trial various potential witnesses, including officers and employees of Leucadia Corporation ("Leucadia") (formerly known as James Talcott, Inc. ("Talcott")), the largest secured creditor in this case. The trial that is anticipated involves a contested proceeding commenced by Leucadia to pierce the corporate veil of Silverman Holding Corporation, whose stock is owned by the bankrupt's children, so as to attempt to bring the assets of this corporation within the pale of this bankruptcy case. Presently at issue, however, is whether this bankrupt, under the facts of this case, may avoid or duplicate the pretrial discovery methods available under the Federal Rules of Civil Procedure that are made applicable in cases under the former Bankruptcy Act by Part VII of the then Bankruptcy Rules and, additionally, conduct examinations of such witnesses and cause the production of documents pursuant to Bankruptcy Rule 205(a) (now Rule 2004 with respect to cases filed under the Bankruptcy Code). The potential witnesses have moved to quash the subpoenas for various reasons and contend that if the bankrupt seeks discovery in connection with the pending contested matter he should proceed under the Federal Rules of Civil Procedure and not by way of Bankruptcy Rule 205(a).

Currently there is no estate to administer; this is virtually a no-asset case. Leucadia's secured claim, which amounted to approximately 83% of the allowed claims, was undersecured and was not satisfied in full upon foreclosure. Nor is there any discharge to investigate; the bankrupt's discharge was previously denied for several reasons, including the failure to keep or preserve books and records from which his financial condition could be ascertained. Thus, the objecting witnesses reason that the factors required for granting the Rule 205(a) examination now sought by the bankrupt do not exist in this case.

The bankrupt seeks an examination beyond the issues raised in the contested matter addressed to piercing the corporate veil of Silverman Holding Corporation. He asserts that Leucadia fraudulently inflated the amount of its secured claim with the result that there might be a surplus over and above administration claims, priority claims and creditors' claims and that he would have a right to a return of such alleged surplus. In essence, the bankrupt seeks to explore again the issue of fraud upon the court. This issue was previously raised by the bankrupt when he brought a *pro se* action against Leucadia in this court, at which time he examined witnesses and was permitted to put in evidence virtually all of the documents he introduced in support of his position. It was then found that the bankrupt failed to sustain his charge that Leucadia perpetrated a fraud upon this court. That decision was appealed to the district court, but the appeal has since been withdrawn with permission of the district court. The bankrupt's present attorneys assert that the proposed examinations under the Bankruptcy Rules should produce additional evidence that would support the

charge that Leucadia fraudulently inflated the amount of its secured claim.

## BACKGROUND

Isaac Silverman filed a petition for a real estate arrangement under Chapter XII of the former Bankruptcy Act (the "Act") on December 13, 1977 and was authorized to continue as a debtor in possession pursuant to former Bankruptcy Rule 12–17(b). On March 31, 1978, the court ordered Silverman to post an indemnity bond pursuant to former Bankruptcy Rule 12–19(d), to protect the interests of secured creditors, including a secured claim filed by Talcott in excess of $18,000,000.[1] *See In re Silverman,* 16 Collier Bankr.Cas. 497 (MB) (Bkrtcy.S.D.N.Y. 1978). As of May 12, 1978, the date by which the bond was to be posted, Silverman was unable to obtain such a bond. The real estate arrangement was thereby aborted and the court entered an order adjudicating Silverman a bankrupt and appointing a trustee.

On October 30, 1978, Talcott was granted leave to foreclose its liens on certain parcels of real estate owned by the bankrupt. Foreclosure actions on these properties ensued. At present, all the properties have been foreclosed upon and sold. On May 30, 1979 and July 12, 1979, orders were entered approving the sale by the trustee of the bankrupt estate to Talcott of whatever right, title and interest he had in these properties for $10,000. This sale was motivated by the fact that there did not appear to be any free assets in this estate, whereas administration costs were mounting.

The bankrupt was later confronted on January 29, 1979, with a complaint objecting to discharge under Act § 14(c) which was filed by Talcott's successor, Leucadia. While this action was pending, the bank-

rupt filed a Notice of Objection to Leucadia's claims of over $18,000,000. On April 24, 1981, the court sustained Leucadia's discharge complaint on the grounds that the bankrupt failed to keep financial records and refused to obey court orders. *In re Silverman,* 10 B.R. 727 (Bkrtcy.S.D.N.Y. 1981). On that same date, the court also dismissed the bankrupt's objection to Leucadia's claim holding that the bankrupt had no standing to object to the claim in a case where a trustee had been appointed and where there was no proof of any surplus for the estate. *In re Silverman,* 10 B.R. 734 (Bkrtcy.S.D.N.Y.1981), *aff'd,* 37 B.R. 200 (S.D.N.Y.1982).[2]

In November, 1982, the bankrupt applied to the court for an order staying certain foreclosure actions commenced by Leucadia. The bankrupt, who was then proceeding *pro se,* contended that Leucadia had perpetrated a fraud upon the court when it filed its secured claim which ultimately led to the bankrupt's adjudication. The court found no fraud and denied the application for a stay of the foreclosures.[3] An appeal was taken from the order of the bankruptcy court denying the stay, and on December 8, 1983, the appeal was withdrawn with the permission of the district court.

The trustee in this case has also commenced a proceeding against the bankrupt from which arises the instant controversy. The trustee's application, dated June 1, 1983, seeks an order declaring that Silverman Holding Corporation, a corporation of which Isaac Silverman was a principal shareholder, is an alter ego of the bankrupt and hence, is property of the bankrupt estate. Essentially, the trustee wishes to pierce the corporate veil for the benefit of the estate. In the course of the pre-trial discovery proceedings, the bankrupt obtained four *ex parte* orders authorizing ex-

---

1. Talcott filed a secured claim of $18,533,-310.43 and an administrative claim of $404,-373.30.

2. The bankruptcy court did grant standing to the bankrupt with regard to any *proven* surplus or deficiency claim by order dated October 4, 1982.

3. On April 13, 1983, this court dismissed a second application made by the bankrupt which asserted basically the same fraud theory propounded in the November, 1982 proceeding. In the second action, however, the bankrupt was represented by counsel.

aminations under Fed.R.Bankr.P. 2004 to be taken of four individuals associated with Leucadia. The purported purpose of the examinations is not only to prepare a defense for the trial on the issue of piercing the corporate veil, but also "to examine into issues and questions far more complex and broad than the question of MR. SILVERMAN'S alter ego, to wit, questions involving the property, liabilities and financial condition of the debtor and LEUCADIA'S claim against the bankrupt. . . ." The four individuals have moved this court for protective orders quashing the subpoenas.

It should be noted that only two of the four individuals were served with subpoenas, namely Martin Bienenstock and Edwin Marks. The other two individuals, Joseph Steinberg and David Cumming, were never served and are therefore not required to respond to the purported demands for examination and production of papers. The determination as to the propriety of the subpoenas will therefore relate solely to the two individuals who were served.

## DISCUSSION

■ Preliminarily, it is noted that Rule 2004 of the recently adopted Bankruptcy Rules does not apply to cases commenced under the former Bankruptcy Act. Although the order of the United States Supreme Court prescribing the new Rules states that they shall apply "to proceedings then pending,"[4] it is evident from Rule 1001 and its accompanying advisory committee note that the new Rules are applicable only to cases commenced under the Code and not to so-called Act cases. Rule 1001 states that the new Rules govern procedure "in cases under chapters 7, 9, 11 and 13 of title 11 of the United States Code." The advisory committee note adds that the

Bankruptcy Code is what is meant by "title 11 of the United States Code," and distinguishes the now repealed Bankruptcy Act of 1898. Moreover, the committee note does not mention the Act where it provides that the new Rules "apply to all cases filed *under the Code* except as otherwise specifically stated." Fed.R.Bankr.P. 1001 advisory committee note, 11 U.S.C.A. at 36 (Supp. 1983) (emphasis added). The new Rules do not displace the former Bankruptcy Rules as they apply to cases filed under the Act. The bankrupt's applications for examinations under new Rule 2004 will therefore be treated as requests under former Rule 205 which still governs this Act case.[5]

The movants argue in support of their motion for a protective order pursuant to Fed.R.Civ.P. 26(c), made applicable to this bankruptcy proceeding by former Bankruptcy Rules 726 and 914, that it is the bankrupt's burden to prove that he is entitled to utilize Rule 205 to conduct the proposed examinations.[6] On its face, this rule offers no guidance as to allocating the burden of proof, and simply provides in part that "[u]pon application of any party in interest, the court may order the examination of any person." Former Rule 205(a), 411 U.S. 991, 1025, 93 S.Ct. 3073, 3115, 37 L.Ed.2d xxxi, xlvii (1973). In defining the scope of the discovery, the rule adds that the examination "may relate only to the acts, conduct, or property of the bankrupt, or to any matter which may affect the administration of the bankrupt's estate, or to his right to discharge." Former Rule 205(d), 411 U.S. at 1025, 93 S.Ct. at 3116, 37 L.Ed.2d at xlvii.

■ Hence, a party who wishes to obtain a subpoena to examine a witness under Rule 205(a) need only represent that he is a

---

**4.** *See Best Manufacturing Inc. v. White Plains Coat and Apron Co. (In re Danielle Laundries, Inc.),* No. 83 B 20373, slip op. at 7 (Bkrtcy.S.D. N.Y. Nov. 21, 1983); Fed.R.Bankr.P., 11 U.S. C.A. at 5 (Supp.1983).

**5.** The old and new rules are substantially similar and it is clear that Rule 2004 is derived from former Rule 205(a). *See In re G.H.R. Energy Corp.,* 33 B.R. 451, 453 n. 3 (Bkrtcy.D.Mass.

1983); Fed.R.Bankr.P. 2004 advisory committee note, 11 U.S.C.A. at 95 (Supp.1983).

**6.** The movants actually refer to new Rule 2004 in this regard. However, in view of the above conclusion that the new Bankruptcy Rules do not apply to this Act case, the issue is whether the burden of proof lies with the bankrupt under former Rule 205.

party in interest and that he will conduct the examination within the rule's allowed scope of discovery. Rule 205(a) does not require that the order be obtained on notice. In fact, the order authorizing the examination is ordinarily entered *ex parte.* 12 Collier on Bankruptcy ¶ 205.07 at 2–83 (L. King 14th ed. 1975). However, once a motion is made to quash the subpoena, it becomes the examiner's duty to make a showing of good cause for the examination. *See Freeman v. Seligson,* 405 F.2d 1326, 1335 (D.C.Cir.1968) (applying good cause standard to subpoena issued under Act § 21(a)); *In re Thomases,* 32 B.R. 678, 11 B.C.D. 2, 3 (Bkrtcy.S.D.N.Y.1983); *In re Western Pork Packers, Inc.,* 5 B.C.D. 396, 397 (Bkrtcy.S.D.N.Y.1978); *In re duPont Walston, Inc.,* 4 B.C.D. 61, 64 (Bkrtcy.S.D.N.Y.1978).[7] A ruling on the motion for a protective order will therefore hinge on the bankrupt's ability to make a showing of good cause for the examinations.

■ This case does not involve a typical request for a Rule 205 examination of the bankrupt, the broad latitude of which has been characterized as a "fishing examination," *In re Foerst,* 93 F. 190, 191 (S.D.N.Y. 1899), and "exploratory and groping." *Sachs v. Hadden,* 173 F.2d 929, 931 (2d Cir.1949). Rather, this is a request by an adjudicated bankrupt, who has already been denied his discharge, to examine various individuals associated with a creditor, in a virtually no-asset case. The discovery request arises in a "contested matter," *see* Former Bankruptcy Rule 914, in which the trustee seeks to pierce a corporate veil for the benefit of the estate.

The motion to quash is based on Fed.R. Civ.P. 26(c)(1), incorporated in this case by Former Bankruptcy Rules 726 and 914, which provides:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court

in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the discovery not be had.

The movants contend that the subpoenas at issue are designed to harass and should therefore be quashed. Additionally, they argue that the proposed discovery which is beyond the scope of this contested matter "flies in the face of the policies of finality" since it has already been determined by this court that the bankrupt lacks standing to challenge Leucadia's claim, and that there was no fraud perpetrated on the court when the claim was filed. Further facts surrounding these issues are what the bankrupt seeks to discover.

*In re Olin of New York, Inc.,* 4 B.C.D. 1184 (Bkrtcy.S.D.N.Y.1979), involved a trustee's application for a Rule 205 examination of a creditor. The trustee applied for the examination after initiating a suit against the creditor to recover certain vehicles and to invalidate a security interest. The trustee previously examined the creditor under Rule 205 before the commencement of that action. For this reason, the creditor moved to quash the second Rule 205 subpoena as an unnecessary burden. The court denied the motion and allowed the examination to proceed notwithstanding the pending suit since the prior action "was commenced to clarify one issue, *i.e.,* title to eight vehicles, and no more." 4 B.C.D. at 1186. A second Rule 205 examination was deemed appropriate because the trustee might have uncovered information about the bankrupt's prebankruptcy dealings with the creditor which could have embraced issues beyond those contained in the pending suit. *Id.* at 1185. This information may have led to additional actions to be brought by the trustee.

The instant case does not present such possibilities. Unlike the trustee inquiring into issues which might affect the adminis-

---

**7.** *But cf.* Fed.R.Civ.P. 26(c) (burden on movant seeking protective order since relief will be granted "for good cause shown").

tration of the estate, this adjudicated bankrupt has been determined by this court, and by the district court on appeal, to lack standing *vis a vis* Leucadia's claim against the estate. The validity of this claim may not be relitigated under the doctrine of res judicata. *See, e.g., Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980); *Gargiul v. Tompkins,* 704 F.2d 661, 665 (2d Cir.1983). Similarly, this court's prior decision finding that no fraud was committed by Leucadia precludes a renewal of such an argument at this stage. *See id.; Garr v. Lerner,* 528 F.Supp. 630, 632 (S.D.N.Y.1981). To permit discovery as to these matters will only lead to the inevitable roadblock of res judicata which will bar the underlying claims on the merits.

Where Rule 2004 and former Rule 205 are invoked to conduct an examination of a witness other than a debtor, bankruptcy courts have denied the discovery for various reasons. *In re GHR Energy Corp.,* 33 B.R. 451, 455 (Bkrtcy.D.Mass.1983), held that several joint debtors were not entitled to examine an employee of a creditor under Rule 2004. The court suggested that discovery under Fed.R.Civ.P. 26 was more appropriate where the proposed examination would involve the internal affairs of the creditor. Reference was made to *In re Good Hope Refineries, Inc.,* 9 B.R. 421 (Bkrtcy.D.Mass.1981), where it was noted:

> There may even be a question as to whether Rule 205 was ever intended for a Chapter XI debtor who, whatever other problems may exist, unlike the Trustee was not in need of a quick factual fix relative to the estate, its existence and location.

*Id.* at 423.

*In re Mantolesky,* 14 B.R. 973 (Bkrtcy.D. Mass.1981), a case upon which the bankrupt relies heavily, is not inconsistent. In *Mantolesky,* the court allowed a Chapter 11 debtor to examine in a limited fashion a third party with whom the debtor had financial dealings. Part of the debtor's need for Rule 205 to examine the third party was to obtain information to prevent further delay in filing a Chapter 11 reorganization plan. *Id.* at 975. Furthermore, the court had before it specific questions from which it could decipher requests for information relevant to the administration of the estate.

In sharp contrast to the Chapter 11 debtor seeking to reorganize in *Mantolesky,* Isaac Silverman has been not only adjudicated a bankrupt, but has also been found to lack standing *vis a vis* Leucadia's claim which is the subject of the desired examinations. Moreover, even if the bankrupt did have an interest in the ramifications of Leucadia's claim, the scope of the subject matter of the examinations sought is not delineated. Rather, the bankrupt states in broad terms that the examinations "will address 'the acts, conduct, or property, or to the liabilities and financial condition of the debtor, or to any matter which may affect the *administration of the debtor's estate* ....'" [sic] Respondent's Memorandum of Law, unnumbered page 11 (quoting Rule 2004(b)). This is not the type of discovery request involved in *In re Mantolesky.*

Rule 205 does not authorize the examinations sought herein. If the request for the examinations is in fact to prepare a defense to the trustee's pending action, then it is clear that Rule 205 may not be utilized in a contested proceeding to circumvent the more limited discovery tools provided by the Federal Rules of Civil Procedure. *See In re Western Pork Packers, Inc.,* 5 B.C.D. at 397; *In re duPont Walston, Inc.,* 4 B.C.D. at 63–64. Alternatively, if the examinations are not connected with the contested matter, the bankrupt may not invoke Rule 205 to examine a creditor or third-party where the adjudicated bankrupt has been denied a discharge and where his prior charges of fraud on the court have been resolved against him. The bankrupt has failed to establish good cause for the proposed examinations. Accordingly, the motion to quash the subpoenas is granted.

SUBMIT ORDER on notice.