In re **ROBERT LANDAU ASSOCIATES, INC.,** Robert Landau International, Ltd. Professional Sports Licensing, Inc., RLA Conventions & Events, Inc., **Debtors.**

**Bankruptcy Nos. 84 B 11275 (TLB), 84 B 11278 (TLB).**

United States Bankruptcy Court, S.D. New York.

July 2, 1985.

Wofsey, Certilman, Haft, Lebow & Balin by Martin F. Brecker, John Preefer, Jeffrey W. Levitan, New York City, for debtors.

Moses & Singer by Ronald Cohen, David B. Picker, New York City, for Trustee.

## DECISION AND ORDER ON DEBTORS' CROSS MOTION TO VACATE EX PARTE ORDER DIRECTING CONFIDENTIALITY AND SEALING OF TRANSCRIPTS

TINA L. BROZMAN, Bankruptcy Judge.

This is a motion by the debtors pursuant to Rule 60(b) of the Federal Rules of Civil Procedure made applicable to a contested matter in a bankruptcy case pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure ("F.R.B.P."), for an order vacating a prior *ex parte* order of this court obtained by the trustee which order deemed confidential the transcripts of and exhibits produced at an examination pursuant to F.R.B.P. 2004 of a former officer of the debtors. For the reasons discussed below, the motion is granted and the order vacated.

### FACTS

On September 14, 1984, Robert Landau Associates, Inc. ("RLA") and three related entities filed petitions for relief under chapter 11 of the Bankruptcy Code (the "Code") and on September 18, 1984, an order was issued consolidating the chapter 11 cases for purposes of administration only. On February 1, 1985, the debtors' chapter 11 cases were converted to liquidation cases under chapter 7 of the Code. Albert Togut was thereafter appointed trustee (the "Trustee").

At a meeting of creditors pursuant to section 341 of the Code held on May 10, 1985, Robert Landau, the former principal and president of "RLA", appeared and gave sworn testimony in response to questions by the trustee's counsel as well as by other creditors.[1] After taking such testimony, and on consent of all parties present, the 341 meeting was adjourned until June

---

1. On December 26, 1984, Judge Ryan, who was assigned this case before his retirement, issued an order which, among other things, designated Robert Landau to be the debtor pursuant to Bankruptcy Rule 9001(5).

18, 1985 for the purpose of continuing the examination of Mr. Landau.

Prior to this time, on December 28, 1984, the law firm of Moses & Singer, then acting as counsel for the Official Committee of Unsecured Creditors (and now as counsel for the trustee) obtained an order directing Nathan Unger to appear and give testimony pursuant to F.R.B.P. 2004(a). Mr. Unger was the chief financial officer of the debtors until approximately December 1984. On January 4, 1985, Mr. Unger, although appearing at the 2004 examination, refused to answer questions, invoking his Fifth Amendment privilege against self-incrimination. However, Mr. Unger later agreed to testify and gave testimony with respect to the debtors on February 7, 1985, March 13, 1985, March 14, 1985 and May 9, 1985. It appears Mr. Unger's testimony related to various possible criminal activities on the part of persons connected with the debtors. Transcripts of the examination of Mr. Unger were supplied to the United States Attorney for the Southern District of New York who commenced a criminal investigation which is ongoing as of this date.

On May 21, 1985 an application (the "Application") was presented to this court *ex parte* by the trustee and his counsel requesting an order directing the confidentiality and sealing of the Unger transcripts from the 2004 examination. The Application stated that the order was "necessary in order to cooperate with the Office of the United States Attorney to protect the integrity of an ongoing criminal investigation of that office, as well as to preserve the effectiveness of discovery herein and to protect the rights of Mr. Unger, the estates of these Debtors and third parties." The Application went on to state that in an effort to preserve the secrecy and confidentiality, and hence the effectiveness and integrity of the investigation, the United States Attorney requested the trustee to make the Application for an order preserving the confidentiality of the Unger transcripts. The United States Attorney neither appeared nor submitted any papers in support of the Application.

On May 21, 1985, this court issued the requested order (the "Confidentiality Order"). The Confidentiality Order deems confidential the testimony of Unger and exhibits from his Rule 2004 examinations and further provides that they should not be

"disclosed disseminated or communicated to any person other than the following persons: a) the Interim Trustee or Trustee of these debtors or any of them; b) the Interim Trustee's or Trustee's counsel and accountants; c) the United States Trustee; d) the United States Attorney; e) Frank Zolfo & Co.; f) Mr. Unger and his counsel; g) Members of the Creditors Committee and their respective counsel; and h) the employees and agents of the foregoing, *provided that* the person or entities described in subparagraph (g) shall not duplicate any transcript or document disseminated to them without prior written consent of the Trustee, his counsel or further order of this court.

The Confidentiality Order further states that any transcripts, documents or exhibits distributed in accordance with the order shall bear a legend, conspicuously printed on the first page, which states:

"CONFIDENTIAL: This transcript [document] and the contents thereof are subject to an Order of Confidentiality of the U.S. Bankruptcy Court, Southern District of New York, dated May, 1985 in cases entitled *In re Robert Landau Associates, Inc.,* et al. case nos. 84 B 11275 (TLB) through 84 B 11278 (TLB), and may not be disclosed, transmitted, distributed, disseminated, given or shown to any person except in strict compliance with the terms of said Order."

Further, the Confidentiality Order provides that the transcripts, documents and exhibits associated with the Unger examinations which are filed with the court shall be filed in sealed envelopes with the word "CONFIDENTIAL" in bold type and a legend stating:

"This envelope is not to be opened nor the contents thereof displayed or re-

vealed, by Order of the Court dated May   , 1985."

The final paragraph of the Order directs that upon its entry, the Clerk of the Court shall detach the attached Application and deposit it separately in the court's files enclosed in a sealed envelope bearing the same legend as ordered to be placed on disseminated transcripts and documents.

The Application recited that "[t]he very information which we are forced to disclose herein in order to seek the relief requested would itself likely prejudice the U.S. Attorney's investigation if seen by persons who could be or know persons who could be potential targets of said investigation." The potential targets were not identified.

Apparently, the Application was never detached and Mr. Landau did, indeed, learn of the investigation; when debtors' counsel learned of the Order's entry and sought a copy in the clerk's office, they also obtained a copy of the Application. As a result, on June 17, 1985, debtors' counsel sought an adjournment of the June 18, 1985 341 meeting to enable them to seek to vacate the Confidentiality Order. The trustee's counsel denied that adjournment. Mr. Landau did not attend the 341 meeting. Neither did the debtor's counsel who was delayed at a court hearing in another district. Subsequent to the meeting, counsel for the trustee made an oral application to this court for a motion to compel Mr. Landau to testify. The debtor's counsel, who had by then arrived, opposed the oral application asserting that the order ought to be vacated before Mr. Landau had to testify. The court directed the trustee to make his motion on papers and denied the oral application without prejudice.

Thereafter, on June 19, 1985, the trustee moved by Order to Show Cause (a) pursuant to section 105 of the Code and the court's inherent powers to hold Robert Landau in contempt for failing to appear for the June 18, 1985 341 meeting; (b) pursuant to F.R.B.P. 2005(a)(3) to require a marshal or other duly authorized officer to bring Robert Landau before the court and cause him to submit to said examinations; and (c) pursuant to F.R.B.P. 2005(a) to fix the conditions for Robert Landau's examination, including requiring him to pay the trustee's attorneys' fees for the previously scheduled 341 meeting which he did not attend. The debtors' counsel opposed the trustee's motion and cross moved for an order vacating the confidentiality order. The debtors argued, in essence, that Mr. Landau's behavior was not contumacious since no court order directed his appearance at the examination and since he had asked the trustee for an adjournment to seek the vacatur of the Order; that this court is, in any event, without power to punish for contempt of its own orders; that Mr. Landau would be "forced" to invoke his Fifth Amendment privilege against self-incrimination at great damage to his personal reputation and standing in the community if he were compelled to testify before he had reviewed Unger's testimony; and that the trustee had failed to demonstrate any legal justification for the Confidentiality Order. In response, the trustee submitted an affidavit from Assistant United States Attorney Martin Perschetz which indicated that the United States Attorney had supported the entry of the Confidentiality Order and that premature disclosure of the sealed information would impede and obstruct an ongoing criminal investigation.

Hearings on both motions were held before this court on June 26, 1985. The United States Attorney did not appear. This court denied the particular relief requested by the trustee.[2] However, the court directed Mr. Landau to appear and testify, sub-

---

2. In ruling that it would not hold Mr. Landau in contempt, the court was not passing on the continued viability of its power to hold one in contempt in appropriate circumstances. Given the facts of this dispute and given Mr. Landau's representation that he would comply with an order compelling him to testify, the court felt that it would simply impede unnecessarily the expeditious administration of the estate to grant the trustee's motion by spawning litigation regarding the ability of the court to enforce its own orders. The court preferred, instead, to take Mr. Landau at his word and to reach the merits of his request to vacate the Confidentiality Order.

**674**

ject to his Fifth Amendment privilege, at a 341 meeting to be scheduled by the parties and at any adjournment of that meeting. The court reserved decision on the motion to vacate the Confidentiality Order.

In support of the continued vitality of that Order, the trustee argues that its entry was and remains necessary to protect an ongoing criminal investigation, that rule 2004 examinations are not public so that the transcripts need not be (and have not been) filed with the court, and that sections 105(a) and 107 of the Code, F.R.B.P. 7026 and 9018 and Fed.R.Civ.P. 26(c) all are proper predicates for the issuance of the Confidentiality Order. In the alternative, the trustee argues that if none of the rules and statutes which he cites support issuance of the Confidentiality Order, the court had the inherent power to issue it. The Debtors counter with the arguments that the trustee has not met his burdens of justifying the extraordinary relief obtained in the Confidentiality Order and of showing the serious harm that would be caused by disclosure and that there is no legal authority for the entry of the Confidentiality Order.

Before turning to a discussion of the legal issues, the court should point out that not until the hearing on the motions did the trustee enlighten the court (and the Debtor) that Mr. Unger had been granted immunity from prosecution. Neither the original application in support of the Confidentiality Order nor any of the papers submitted in support of the trustee's contempt motion or in opposition to the motion to vacate revealed the grant of immunity. Whereas the immunity could have been inferred from the statement that Mr. Unger later agreed to testify, the court did not so infer because the Application recited that "the requested Order is necessary ... to protect the rights of Mr. Unger...."

## DISCUSSION

■ The Bankruptcy Rules contemplate that where an order such as has been obtained by the trustee is sought *ex parte*, there may be a challenge to the propriety of its entry or reach. Rule 9018, one of the rules under which the trustee predicated his original request for the Confidentiality Order, provides that:

If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Although it is the debtors who seek a vacatur of the Confidentiality Order, since the order was entered *ex parte*, the trustee bears the burden of demonstrating the appropriateness of its enforcement and continuation. *In re Silverman*, 36 B.R. 254, 258 (Bankr.S.D.N.Y.1984). *See also Freeman v. Seligson*, 405 F.2d 1326, 1335 (D.C. Cir.1968) (applying good cause standard to subpoena issued under Act § 21(a)); *In re Thomases*, 32 B.R. 678, 11 B.C.D. 2, 3 (Bankr.S.D.N.Y.1983); *In re Western Pork Packers, Inc.*, 5 B.C.D. 396, 397 (Bankr.S. D.N.Y.1978); *In re duPont Walston, Inc.*, 4 B.C.D. 61, 64 (Bankr.S.D.N.Y.1978).

■ As the underpinning for the issuance and continuation of the Confidentiality Order, the trustee points to sections 105(a) and 107 of the Code, Bankruptcy Rules 7026 and 9018, and rule 26(c) of the Federal Rules of Civil Procedure. He further asserts that if none of that cited authority can be held to justify the issuance of the Confidentiality Order, the inherent powers of courts over their own process to prevent abuses, oppression and injustice can.

Thus the inquiry begins with section 105(a) of the Code, the bankruptcy All Writs Statute, which provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate *to carry out the provisions of this title*. (Emphasis supplied).

As the language itself suggests, and the district court for this district has held, any relief sought under the section must be in aid of authority exercised by the court pursuant to some other provision of the Code. *In re Johns-Mansville Corp.*, 40 B.R. 219, 225 (S.D.N.Y.1984). The trustee proffers as that linchpin section 107, which provides

in pertinent part that the bankruptcy court may:

> (b)(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

On its face, section 107 offers the trustee no comfort for it makes no mention of either an ongoing criminal investigation or an investigation undertaken by the trustee. Recognizing this, the trustee next directs the court's gaze to F.R.B.P. 9018, which implements section 107 but, in so doing, goes it one step better by adding a third circumstance which may warrant protection by the court:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires ... (3) to protect government matters that are made confidential by statute or regulation....

Whereas the trustee invites the court to uphold the Confidentiality Order pursuant to this rule, neither he nor the United States Attorney offers to the court any "statute or regulation" which makes Unger's testimony or the exhibits which he produced confidential.

As his final grounds for express authority for the issuance of the Confidentiality Order, the trustee urges upon the court F.R.B.P. 7026, which incorporates Rule 26 of the Federal Rules of Civil Procedure. However, F.R.B.P. 7026 applies to discovery conducted in an adversary proceeding (as defined in F.R.B.P. 7001), which this is not. It also applies, via F.R.B.P. 9014, to discovery conducted in conjunction with a contested matter, commenced by motion. Here, the trustee was not conducting any discovery in aid of his position on some motion but was conducting the far broader examination permitted under F.R.B.P. 2004, an examination often described as a "fishing expedition." [3] Such examinations do not replace discovery and are not conducted in conjunction with pending litigation. Accordingly, Rule 7026 does not aid the trustee.

■ Finding no express authority which permits the issuance of the Confidentiality Order, we turn to whether the inherent powers of the court should be held to permit the Confidentiality Order to stand. At the outset, the court is confronted with the conflict between maintaining confidentiality of Unger's testimony which was at least part of the impetus for a currently existing criminal investigation and the rights of the debtors, as parties in interest to the bankruptcy and to the trustee's investigation, to have access to the fruits of the trustee's examinations concerning the estates and their administration. Certainly, results of a rule 2004 examination would fall within the realm of information which the trustee is required upon request to furnish under section 704(7) of the Bankruptcy Code.[4] The mandate to furnish such information under that section is only qualified by the words "unless the court orders otherwise."

Although the trustee did not point to section 704 as authority for allowing confidentiality, that authority seems implicit in that section. Unless the court had the inherent power to order confidentiality, it could not "order otherwise." But stating that inherent power exists (so that section 105 of the Code could be invoked), does not constitute all that need be said. The court must be satisfied that the exercise of that inherent power is warranted.

The nature and scope of the Confidentiality Order, as sought and granted, lead this court to doubt whether exercise of its inherent powers was indeed appropriate. On the one hand, the trustee asserts the strong need for confidentiality, yet access to Unger's testimony embraces a list so

---

**3.** *See In re Silverman, supra,* 36 B.R. 254, 258 (Bankr.S.D.N.Y.1984) citing *In re Foerst,* 93 F. 190, 191 (S.D.N.Y.1899) and *Sachs v. Hadden,* 173 F.2d 929, 931 (2d Cir.1949). The predecessor to F.R.B.P. 2004 was Rule 205.

**4.** Section 704 directs the trustee unless the court orders otherwise to furnish such information concerning the estate and the estate's administration "as is requested by a party in interest."

extensive as to significantly undermine the purported need for the Order and to pose serious questions as to its purpose. This list includes:

a) the Interim Trustee or Trustee of the debtors;

b) the Interim Trustee's or Trustee's counsel and accountants;

c) the United States Trustee;

d) the United States Attorney;

e) Frank Zolfo & Co.,[5];

f) Mr. Unger and his counsel;

g) Members of the Creditors Committee and their respective counsel; and

h) the employees and agents of the foregoing.

In sheer numbers alone, this list encompasses not only a multitude of categories of people but numerous people within each category. In the face of this extensive list, the court cannot help but conclude that the Confidentiality Order was tailored, as the debtors argue, specifically to prevent Mr. Landau from obtaining the Unger testimony to which he would otherwise be entitled under section 704(7).[6] Where access to confidential records is broad, courts should be particularly wary. *See United States v. Davis*, 702 F.2d 418, 423 (2d Cir.1983), *cert. denied*, 463 U.S. 1215, 103 S.Ct. 3554, 77 L.Ed.2d 1400 (1983) (government granted access to documents sealed in the bankruptcy court in view of provision of protective order which allowed entity examined by trustee to disclose the information deemed confidential to any person or entity).

5. Frank Zolfo & Co. are the accountants for the Committee of Unsecured Creditors in the aborted Chapter 11 case.

6. Whereas one might conceivably argue that Mr. Landau is not a party in interest entitled to utilize section 704, inasmuch as he has been designated the debtor by a predecessor judge, it is not necessary to pass on that question.

Moreover, since section 704 imposes on a trustee the duty to fulfill requests for information unless relieved of that duty by the court, the trustee's argument that the transcripts need not be furnished to the debtors since they were not filed with the court is simply wrong. Curiously, the trustee urged in support of this position a telephonic ruling by Judge Schwartzberg

The trustee urges the court in considering the debtors' motion to vacate to be guided by the decision in *International Products Corp. v. Koons*, 325 F.2d 403 (2d Cir.1963) where, the trustee says, it was determined that an affidavit from a government official alleging that disclosing material "could be extremely embarrassing and cause great inconvenience and hardship" and would be "contrary to the best interests of the foreign policy of the United States" was sufficient to justify an order of confidentiality. *Koons*, 325 F.2d at 405. In *Koons*, the circuit court held that the portion of a district court order which sealed a deposition and limited the defendants and others in their use of information obtained therefrom was proper, and that the portion of the order which restricted the use of papers filed in the court was also proper, but that the portion of the order which restricted the freedom of use of writings or information obtained independently of court processes was an improper denial of first amendment rights. The last conclusion was reached notwithstanding the suggestion of interest which the United States Attorney filed in the action submitting that "an order limiting disclosure, as described in this Court's order to show cause, dated May 24, 1963, would further the foreign policy objective of the United States." *Id.* at 405.

■ The trustee's reading of *Koons* is a facile one. So much of the order as was upheld in *Koons* did not deny access to the confidential material to the defendants nor

of this district. That ruling made in *In re Information Displays, Inc.*, 84 B 20229 does not support the trustee. In that case, the parties to be examined at a 2004 examination conducted by the debtor objected to the presence at that examination of creditors and other persons who wished to participate therein. Judge Schwartzberg ruled that they could be present if the debtor invited them but could not participate. He noted that even where parties in interest are excluded at the option of the examiner from an examination, they may still order the transcript of that examination. *See* transcript of speaker phone conversation between counsel and Judge Schwartzberg, January 30, 1985, a copy of which is appended hereto.

did it restrict their use of it for trial preparation, for the trial itself or for any other lawsuit. Rather, the order permissibly prohibited the defendants from disclosing these materials to third parties. Here, by virtue at least of being designated the debtor, if not in his own right, Mr. Landau is a party in interest who may well be a defendant in future actions brought by the trustee on behalf of the estate. The trustee seeks to deny completely Mr. Landau's access to materials otherwise available to him under 11 U.S.C. § 704(7). The trustee is not a private litigant but a fiduciary with a duty to provide information to parties in interest. This type of duty was not a consideration present in *Koons*. But, in any event, the *Koons* order significantly did not harm the defendants in the conduct of their litigation.

At the hearing on this motion, the trustee's counsel indicated that Mr. Unger's testimony had been proffered on the understanding that a Confidentiality Order would be sought by the trustee. No such representation was made to the court in the application seeking entry of the Confidentiality Order. To the extent that the trustee did seek such an order, he has fulfilled whatever responsibility he may have had; however, that understanding certainly does not bind this court to uphold the Confidentiality Order, particularly since the alleged agreement was never placed before the court for its approval. Mr. Unger, who has not appeared on this motion, does not and cannot maintain that he testified in reliance on the Confidentiality Order since his examination was taken on February 7, 1985, February 15, 1985, March 13, 1985, March 14, 1985 and May 9, 1985, all dates which were prior to the issuance of the Confidentiality Order. Although there is an asser-

tion by the trustee's counsel that Mr. Unger gave additional testimony in June, after the issuance of the Confidentiality Order,[7] there is no claim, as probably there cannot be given Mr. Unger's immunity, that this testimony was secured by virtue of the issuance of the Confidentiality Order.[8]

■ Whereas this court holds that it possesses the inherent authority to seal testimony and enter an order of confidentiality along the lines of the one issued here, the court finds that this particular order should be vacated. The policy of open inspection, established in the Code itself through section 704(7) and F.R.B.P. 5005 and 5007,[9] is "fundamental to the operation of the bankruptcy system and is the best means of avoiding any suggestion of impropriety that might or could be raised." *In re Bell & Beckwith*, 44 B.R. 661, 664 (Bankr.N.D. Ohio 1984). The trustee here has failed to advance any compelling reason why that fundamental policy ought to be varied. The existence of his own investigation, standing alone, is certainly insufficient to warrant the existence of the Confidentiality Order and the trustee does not urge otherwise. Rather, his argument is premised upon the government's claimed used for the order, but the facts belie the asserted strength of that need. This is not to say that the existence of a pending criminal investigation is an insufficient basis to allow confidentiality and sealing of testimony in a bankruptcy case. But the following factors cumulatively compel the court to vacate the Confidentiality Order:

(i) the extensive third party access which the Confidentiality Order contemplates and permits;

(ii) the failure of the Application to be sealed, thus alerting Mr. Landau to some

---

**7.** We are assuming that the testimony was given at the continued Rule 2004 examination.

**8.** Even were the testimony so secured, however, the parties would have been acting at their peril inasmuch as F.R.B.P. 9018 clearly provides that an *ex parte* order is subject to vacatur or modification upon a hearing and notice. *See Davis, supra,* 702 F.2d at 422 holding that where an alleged "understanding" with respect to confidentiality was not placed before the court and

embodied in an order, no justifiable reliance could be shown such as would dictate upholding the agreement, despite claimed Fifth Amendment privilege.

**9.** Rule 5005 provides for the filing with the clerk of the court the petition, proofs of claim or interest, complaints, motions, applications, objections and other papers required to be filed. Rule 5007 provides for the filing of the record of the proceedings before the court.

of the information which the trustee sought to conceal as possibly detrimental to his own and the government's investigations;

(iii) the absence of any statute or regulation protecting the confidentiality of the government's investigation such that F.R. B.P. 9018 would apply;

(iv) the trustee's, rather than the government's, request for the issuance of the order coupled with the government's statement that it "supported" rather than sought the issuance of the Confidentiality Order;

(v) the procurement by the trustee of Mr. Unger's testimony on five occasions prior to the trustee's seeking entry of the Confidentiality Order; and

(vi) the trustee's representation that Mr. Unger has received immunity.

Given these facts, the court holds that the trustee has failed to sustain his burden of showing that the Confidentiality Order was properly entered.

Accordingly, the Confidentiality Order is hereby vacated.

IT IS SO ORDERED.

## APPENDIX

DEPOSITION of NORTH AMERICAN CORPORATION, by DON SIMON, Vice-President, taken by Debtors and Debtors-in-Possession, pursuant to Subpoena, held at the offices of Dornbush Mensch & Mandelstam, Esqs., 747 Third Avenue, New York, New York 10017, on January 30, 1985, at 10:30 a.m., before Arthur Mazlin, a Certified Shorthand Reporter and Notary Public within and for the State of New York.

-----

(The following took place on the speaker phone among counsel and Judge Schwartzberg:)

MR. BROWN: Good morning, Your Honor. This is Eric Brown, General Counsel at IDI. We are at Dornbush Mensch & Mandelstam for a 2004 examination of North American Corporation, pursuant to Your Honor's order. Edward Weisfelner is here representing NAC from the firm of Bishop, Liberman & Cook. He has an application to make to the Court.

MR. WEISFELNER: Good morning, Your Honor.

Your Honor, I showed up this morning for a 10 o'clock deposition, and walked into a conference room, to be faced by no less than five attorneys, representing various parties in interest in this proceeding. We have attorneys here from the Dornbush firm; we have in-house counsel for IDI. In addition, we have counsel to the Creditors Committee and counsel to one of IDI's creditors, I understand.

Your Honor, our concern is simply twofold: One, as we read your November 27th order which scheduled this deposition, North American Corporation was to appear for the purposes of examination by the debtor. Your Honor, I am of the habit of reading orders literally, and one would think that an examination by a debtor means just that.

Our second point is that, not too long ago, in the beginning part of January, we had requested of the Dornbush firm a schedule of other—

THE COURT: Don't go into a long history. What is it that you object to?

MR. WEISFELNER: Your Honor, I object, first of all, to the attendance at this deposition by various other parties.

THE COURT: All right. You are absolutely correct. The other parties are not required and need not be allowed to attend this if you don't wish them to. It is your examination. But they are entitled to order the transcript and see what was uncovered.

MR. WEISFELNER: Very well, Your Honor. That is exactly my point.

MR. SHAPIRO: It is not his examination, Your Honor. Isn't it Dornbush's examination?

THE COURT: Whoever's examination it is, that is the party who may conduct it and who may determine who may be there.

MR. SHAPIRO: That's right.

MR. BROWN: That's right, Your Honor. It is the debtors' 2004 examination that is

being held by Dornbush Mensch & Mandelstam. It is the debtors' position that the Creditors Committee, as a primary party in interest, as well as a representative of Nat West, which is one of the largest creditors, does have a right to appear and participate in our 2004 examination.

MR. ROBERTS: Mr. Weisfelner represents the witness, North American Corporation. We are doing the deposing.

THE COURT: It is the debtors' examination. And it is at the debtors' premises or at counsel's premises?

MR. BROWN: That is correct.

MR. ROBERTS: That's right. It is the debtors' examination.

THE COURT: The debtor may determine who may be there.

MR. WEISFELNER: Your Honor, let me make one point: Again in the past we had asked Dornbush for a listing of those other people who were going to be subject to a 2004 examination in the IDI proceeding. We were denied permission to attend or participate in anyone else's examination. And my point simply is, Your Honor, if Dornbush has already set the groundrules—

THE COURT: Wait a minute.

MR. BROWN: It's our groundrules, Your Honor. We are the debtor.

THE COURT: It is the host attorney whose office is being used for the examination called for to determine who may be present. But as far as participating, it is only the debtors' examination. It is only the debtor who may participate. The others may sit by and listen.

MR. WEISFELNER: All right. In other words, if I understand the groundrules, while I have no right, I guess, to object to their attendance here today, you are in fact informing counsel that no one else, other than the debtor, will have an opportunity to participate in the deposition?

THE COURT: If anyone else wishes to examine, they may hold their own 2004 examination.

MR. WEISFELNER: I understand.

THE COURT: All right?

MR. ROBERTS: Thank you, Your Honor.

MR. BROWN: Thank you very much, Your Honor.

-----

DON SIMON, a witness on behalf of North American Corporation, having been first duly sworn by Arthur Mazlin, a Notary Public of the State of New York, was examined and testified as follows:

EXAMINATION BY MR. ROBERTS:

Q   What is your name?

A   Don Simon.